# UNITED STATES *v.* R. ENTERPRISES, INC., ET AL.

No. 89–1436.   Argued October 29, 1990—Decided January 22, 1991

O'CONNOR, J., delivered the opinion for a unanimous Court with respect to Parts I and II, the opinion of the Court with respect to Parts III–A and IV, in which REHNQUIST, C. J., and WHITE, SCALIA, KENNEDY, and SOUTER, JJ., joined, and the opinion of the Court with respect to Part III–B, in which REHNQUIST, C. J., and WHITE, KENNEDY, and SOUTER, JJ., joined. STEVENS, J., filed an opinion concurring in part and concurring in the judgment, in which MARSHALL and BLACKMUN, JJ., joined, *post*, p. 303.

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Dennis*, and *Lawrence S. Robbins*.

*Herald Price Fahringer* argued the cause for respondents. With him on the brief were *Diarmuid White* and *Ralph J. Schwarz, Jr.**

JUSTICE O'CONNOR delivered the opinion of the Court.†

This case requires the Court to decide what standards apply when a party seeks to avoid compliance with a subpoena *duces tecum* issued in connection with a grand jury investigation.

I

Since 1986, a federal grand jury sitting in the Eastern District of Virginia has been investigating allegations of interstate transportation of obscene materials. In early 1988, the grand jury issued a series of subpoenas to three companies — Model Magazine Distributors, Inc. (Model), R. Enterprises, Inc., and MFR Court Street Books, Inc. (MFR). Model is a New York distributor of sexually oriented paperback books, magazines, and videotapes. R. Enterprises, which distributes adult materials, and MFR, which sells books, magazines, and videotapes, are also based in New York. All three companies are wholly owned by Martin Rothstein. The grand jury subpoenas sought a variety of corporate

---

*Bruce J. Ennis, Jr.*, filed a brief for Phe, Inc., as *amicus curiae* urging affirmance.

†JUSTICE SCALIA joins in all but Part III–B of this opinion.

books and records and, in Model's case, copies of 193 video-tapes that Model had shipped to retailers in the Eastern District of Virginia. All three companies moved to quash the subpoenas, arguing that the subpoenas called for production of materials irrelevant to the grand jury's investigation and that the enforcement of the subpoenas would likely infringe their First Amendment rights.

The District Court, after extensive hearings, denied the motions to quash. As to Model, the court found that the subpoenas for business records were sufficiently specific and that production of the videotapes would not constitute a prior restraint. App. to Pet. for Cert. 57a–58a. As to R. Enterprises, the court found a "sufficient connection with Virginia for further investigation by the grand jury." *Id.*, at 60a. The court relied in large part on the statement attributed to Rothstein that the three companies were "all the same thing, I'm president of all three." *Ibid.* Additionally, the court explained in denying MFR's motion to quash that it was "inclined to agree" with "the majority of the jurisdictions," which do not require the Government to make a "threshold showing" before a grand jury subpoena will be enforced. *Id.*, at 63a. Even assuming that a preliminary showing of relevance was required, the court determined that the Government had made such a showing. It found sufficient evidence that the companies were "related entities," at least one of which "certainly did ship sexually explicit material into the Commonwealth of Virginia." *Ibid.* The court concluded that the subpoenas in this case were "fairly standard business subpoenas" and "ought to be complied with." *Id.*, at 65a. Notwithstanding these findings, the companies refused to comply with the subpoenas. The District Court found each in contempt and fined them $500 per day, but stayed imposition of the fine pending appeal. *Id.*, at 64a.

The Court of Appeals for the Fourth Circuit upheld the business records subpoenas issued to Model, but remanded the motion to quash the subpoena for Model's videotapes.

*In re Grand Jury 87–3 Subpoena Duces Tecum*, 884 F. 2d 772 (1989). Of particular relevance here, the Court of Appeals quashed the business records subpoenas issued to R. Enterprises and MFR. In doing so, it applied the standards set out by this Court in *United States* v. *Nixon*, 418 U. S. 683, 699–700 (1974). The court recognized that *Nixon* dealt with a trial subpoena, not a grand jury subpoena, but determined that the rule was "equally applicable" in the grand jury context. 884 F. 2d, at 776, n. 2. Accordingly, it required the Government to clear the three hurdles that *Nixon* established in the trial context—relevancy, admissibility, and specificity—in order to enforce the grand jury subpoenas. *Id.*, at 776. The court concluded that the challenged subpoenas did not satisfy the *Nixon* standards, finding no evidence in the record that either company had ever shipped materials into, or otherwise conducted business in, the Eastern District of Virginia. *Ibid.* The Court of Appeals specifically criticized the District Court for drawing an inference that, because Rothstein owned all three businesses and one of them had undoubtedly shipped sexually explicit materials into the Eastern District of Virginia, there might be some link between the Eastern District of Virginia and R. Enterprises or MFR. *Id.*, at 777. It then noted that "any evidence concerning Mr. Rothstein's alleged business activities outside of Virginia, or his ownership of companies which distribute allegedly obscene materials outside of Virginia, would most likely be inadmissible on relevancy grounds at any trial that might occur," and that the subpoenas therefore failed "to meet the requirements *[sic]* that any documents subpoenaed under [Federal] Rule [of Criminal Procedure] 17(c) must be admissible as evidence at trial." *Ibid.*, citing *Nixon, supra*, at 700. The Court of Appeals did not consider whether enforcement of the subpoenas *duces tecum* issued to respondents implicated the First Amendment.

We granted certiorari to determine whether the Court of Appeals applied the proper standard in evaluating the

grand jury subpoenas issued to respondents. 496 U. S. 924 (1990). We now reverse.

## II

The grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed. Unlike this Court, whose jurisdiction is predicated on a specific case or controversy, the grand jury "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States* v. *Morton Salt Co.*, 338 U. S. 632, 642–643 (1950). The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush. "A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" *Branzburg* v. *Hayes*, 408 U. S. 665, 701 (1972), quoting *United States* v. *Stone*, 429 F. 2d 138, 140 (CA2 1970).

A grand jury subpoena is thus much different from a subpoena issued in the context of a prospective criminal trial, where a specific offense has been identified and a particular defendant charged. "[T]he identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning." *Blair* v. *United States*, 250 U. S. 273, 282 (1919). In short, the Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists. See *Hale* v. *Henkel*, 201 U. S. 43, 65 (1906).

This Court has emphasized on numerous occasions that many of the rules and restrictions that apply at a trial do not apply in grand jury proceedings. This is especially true of evidentiary restrictions. The same rules that, in an adversary hearing on the merits, may increase the likelihood of accurate determinations of guilt or innocence do not necessarily advance the mission of a grand jury, whose task is to conduct an *ex parte* investigation to determine whether or not there is probable cause to prosecute a particular defendant. In *Costello* v. *United States*, 350 U. S. 359 (1956), this Court declined to apply the rule against hearsay to grand jury proceedings. Strict observance of trial rules in the context of a grand jury's preliminary investigation "would result in interminable delay but add nothing to the assurance of a fair trial." *Id.*, at 364. In *United States* v. *Calandra*, 414 U. S. 338 (1974), we held that the Fourth Amendment exclusionary rule does not apply to grand jury proceedings. Permitting witnesses to invoke the exclusionary rule would "delay and disrupt grand jury proceedings" by requiring adversary hearings on peripheral matters, *id.*, at 349, and would effectively transform such proceedings into preliminary trials on the merits, *id.*, at 349–350. The teaching of the Court's decisions is clear: A grand jury "may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials," *id.*, at 343.

This guiding principle renders suspect the Court of Appeals' holding that the standards announced in *Nixon* as to subpoenas issued in anticipation of trial apply equally in the grand jury context. The multifactor test announced in *Nixon* would invite procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena. We have expressly stated that grand jury proceedings should be free of such delays. "Any holding that would saddle a grand jury with minitrials

and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States* v. *Dionisio*, 410 U. S. 1, 17 (1973). Accord, *Calandra, supra,* at 350. Additionally, application of the *Nixon* test in this context ignores that grand jury proceedings are subject to strict secrecy requirements. See Fed. Rule Crim. Proc. 6(e). Requiring the Government to explain in too much detail the particular reasons underlying a subpoena threatens to compromise "the indispensable secrecy of grand jury proceedings." *United States* v. *Johnson*, 319 U. S. 503, 513 (1943). Broad disclosure also affords the targets of investigation far more information about the grand jury's internal workings than the Federal Rules of Criminal Procedure appear to contemplate.

## III

### A

The investigatory powers of the grand jury are nevertheless not unlimited. See *Branzburg, supra,* at 688; *Calandra, supra,* at 346, and n. 4. Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass. In this case, the focus of our inquiry is the limit imposed on a grand jury by Federal Rule of Criminal Procedure 17(c), which governs the issuance of subpoenas *duces tecum* in federal criminal proceedings. The Rule provides that "[t]he court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive."

This standard is not self-explanatory. As we have observed, "what is reasonable depends on the context." *New Jersey* v. *T. L. O.*, 469 U. S. 325, 337 (1985). In *Nixon*, this Court defined what is reasonable in the context of a jury trial. We determined that, in order to require production of information prior to trial, a party must make a reasonably specific request for information that would be both relevant and admissible at trial. 418 U. S., at 700. But, for the

reasons we have explained above, the *Nixon* standard does not apply in the context of grand jury proceedings. In the grand jury context, the decision as to what offense will be charged is routinely not made until after the grand jury has concluded its investigation. One simply cannot know in advance whether information sought during the investigation will be relevant and admissible in a prosecution for a particular offense.

To the extent that Rule 17(c) imposes some reasonableness limitation on grand jury subpoenas, however, our task is to define it. In doing so, we recognize that a party to whom a grand jury subpoena is issued faces a difficult situation. As a rule, grand juries do not announce publicly the subjects of their investigations. See *supra*, at 299. A party who desires to challenge a grand jury subpoena thus may have no conception of the Government's purpose in seeking production of the requested information. Indeed, the party will often not know whether he or she is a primary target of the investigation or merely a peripheral witness. Absent even minimal information, the subpoena recipient is likely to find it exceedingly difficult to persuade a court that "compliance would be unreasonable." As one pair of commentators has summarized it, the challenging party's "unenviable task is to seek to persuade the court that the subpoena that has been served on [him or her] could not possibly serve any investigative purpose that the grand jury could legitimately be pursuing." 1 S. Beale & W. Bryson, Grand Jury Law and Practice § 6:28 (1986).

Our task is to fashion an appropriate standard of reasonableness, one that gives due weight to the difficult position of subpoena recipients but does not impair the strong governmental interests in affording grand juries wide latitude, avoiding minitrials on peripheral matters, and preserving a necessary level of secrecy. We begin by reiterating that the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority.

See *United States* v. *Mechanik,* 475 U. S. 66, 75 (1986) (O'CONNOR, J., concurring in judgment) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process"). See also *Hamling* v. *United States,* 418 U. S. 87, 139, n. 23 (1974); *United States* v. *Johnson, supra,* at 512–513. Consequently, a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance. Indeed, this result is indicated by the language of Rule 17(c), which permits a subpoena to be quashed only "on motion" and "if *compliance* would be unreasonable" (emphasis added). To the extent that the Court of Appeals placed an initial burden on the Government, it committed error. Drawing on the principles articulated above, we conclude that where, as here, a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation. Respondents did not challenge the subpoenas as being too indefinite nor did they claim that compliance would be overly burdensome. See App. in *In re Grand Jury 87–3 Subpoena Duces Tecum,* Nos. 88–5619, 88–5620 (CA4), pp. A–333, A–494. The Court of Appeals accordingly did not consider these aspects of the subpoenas, nor do we.

### B

It seems unlikely, of course, that a challenging party who does not know the general subject matter of the grand jury's investigation, no matter how valid that party's claim, will be able to make the necessary showing that compliance would be unreasonable. After all, a subpoena recipient "cannot put his whole life before the court in order to show that there is no crime to be investigated," *Marston's, Inc.* v. *Strand,* 114

Ariz. 260, 270, 560 P. 2d 778, 788 (1977) (Gordon, J., specially concurring in part and dissenting in part). Consequently, a court may be justified in a case where unreasonableness is alleged in requiring the Government to reveal the general subject of the grand jury's investigation before requiring the challenging party to carry its burden of persuasion. We need not resolve this question in the present case, however, as there is no doubt that respondents knew the subject of the grand jury investigation pursuant to which the business records subpoenas were issued. In cases where the recipient of the subpoena does not know the nature of the investigation, we are confident that district courts will be able to craft appropriate procedures that balance the interests of the subpoena recipient against the strong governmental interests in maintaining secrecy, preserving investigatory flexibility, and avoiding procedural delays. For example, to ensure that subpoenas are not routinely challenged as a form of discovery, a district court may require that the Government reveal the subject of the investigation to the trial court *in camera,* so that the court may determine whether the motion to quash has a reasonable prospect for success before it discloses the subject matter to the challenging party.

## IV

Applying these principles in this case demonstrates that the District Court correctly denied respondents' motions to quash. It is undisputed that all three companies—Model, R. Enterprises, and MFR—are owned by the same person, that all do business in the same area, and that one of the three, Model, has shipped sexually explicit materials into the Eastern District of Virginia. The District Court could have concluded from these facts that there was a reasonable possibility that the business records of R. Enterprises and MFR would produce information relevant to the grand jury's investigation into the interstate transportation of obscene materials. Respondents' blanket denial of any connection to

Virginia did not suffice to render the District Court's conclusion invalid. A grand jury need not accept on faith the self-serving assertions of those who may have committed criminal acts. Rather, it is entitled to determine for itself whether a crime has been committed. See *Morton Salt Co.*, 338 U. S., at 642–643.

Both in the District Court and in the Court of Appeals, respondents contended that these subpoenas sought records relating to First Amendment activities, and that this required the Government to demonstrate that the records were particularly relevant to its investigation. The Court of Appeals determined that the subpoenas did not satisfy Rule 17(c) and thus did not pass on the First Amendment issue. We express no view on this issue and leave it to be resolved by the Court of Appeals.

The judgment is reversed insofar as the Court of Appeals quashed the subpoenas issued to R. Enterprises and MFR, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE MARSHALL and JUSTICE BLACKMUN join, concurring in part and concurring in the judgment.

Federal Rule of Criminal Procedure 17(c) authorizes a federal district court to quash or modify a grand jury subpoena *duces tecum* "if compliance would be unreasonable or oppressive." See *United States* v. *Calandra*, 414 U. S. 338, 346, n. 4 (1974). This Rule requires the district court to balance the burden of compliance, on the one hand, against the governmental interest in obtaining the documents on the other.[1]

---

[1] See, *e. g., In re Grand Jury Subpoena: Subpoena Duces Tecum,* 829 F. 2d 1291, 1298 (CA4 1987); *In re Grand Jury Subpoena Served upon Doe,* 781 F. 2d 238, 250 (CA2) (en banc), cert. denied *sub nom. Roe* v. *United States,* 475 U. S. 1108 (1986); *In re Grand Jury Matters,* 751 F. 2d 13, 19 (CA1 1984); *In re Special April 1977 Grand Jury,* 581 F. 2d 589, 595 (CA7), cert. denied *sub nom. Scott* v. *United States,* 439 U. S. 1046 (1978). Cf.

A more burdensome subpoena should be justified by a somewhat higher degree of probable relevance than a subpoena that imposes a minimal or nonexistent burden.[2]  Against the procedural history of this case, the Court has attempted to define the term "reasonable" in the abstract, looking only at the relevance side of the balance.  See *ante*, at 300, 301.[3]

---

*Hale* v. *Henkel*, 201 U. S. 43, 76–77 (1906) (applying similar balancing test to determine the "reasonableness" of a subpoena under the Fourth Amendment); *In re Grand Jury Impaneled January 21, 1975*, 541 F. 2d 373, 382–383 (CA3 1976) (balancing "public's interest in law enforcement and in ensuring effective grand jury proceedings" and state-created "reports privilege" in deciding whether to quash subpoena).

[2] See, *e. g.*, *In re Grand Jury Subpoena*, 829 F. 2d, at 1296–1301 (applying heightened scrutiny in Rule 17(c) balance because of First Amendment concerns); *In re Grand Jury Matters*, 751 F. 2d, at 18 (requiring Government to show need "with some particularity" because timing of subpoena posed "such potential for harm" to defendants and their right to counsel); *In re Grand Jury Proceedings*, 707 F. Supp. 1207, 1219 (Haw. 1989) (quashing subpoena because "the government has failed to proffer sufficient evidence of fraud permeating the works of the celebrity artists to justify the great magnitude of the subpoena requests"); *In re Grand Jury Proceedings Witness Bardier*, 486 F. Supp. 1203, 1214 (Nev. 1980) (quashing subpoena because demand was "so onerous in its burden as to be out of proportion to the end sought"); *In re Grand Jury Investigation*, 459 F. Supp. 1335, 1343 (ED Pa. 1978) (refusing to quash subpoena because "[court] cannot say that the documentation requested in this instance is excessive relative to the scope of the investigation").

[3] The Fourth Circuit, like the Court, conducted the relevancy inquiry without regard to the burden of compliance.  Respondents, however, in their affidavits in support of their motions to quash, framed their relevancy arguments in the broader context of the burden imposed by the subpoenas. Respondents noted that the subpoenas required production of virtually all their corporate records.  See App. in *In re Grand Jury 87–3 Subpoena Duces Tecum*, Nos. 88–5619, 88–5620 (CA4), p. A–343, ¶ 18; *id.*, at A–497 to A–498, ¶ 8 (hereinafter App.).  Respondents argued that compliance with the subpoenas would violate their rights to privacy and their rights under the First and Fourth Amendments.  See *id.*, at A–342 to A–349, ¶¶ 17, 19–31; *id.*, at A–497, A–500 to A–503, ¶¶ 7, 14–20.  And, as the Court recognizes, *ante*, at 303, respondents expressly contended that the First Amendment implications of the subpoenas required a heightened level of relevance.  App. A–345, ¶ 22; *id.*, at A–502, ¶ 18.

Because I believe that this truncated approach to the Rule will neither provide adequate guidance to the district court nor place any meaningful constraint on the overzealous prosecutor, I add these comments.

The burden of establishing that compliance would be unreasonable or oppressive rests, of course, on the subpoenaed witness. This result accords not only with the presumption of regularity that attaches to grand jury proceedings, as the Court notes, see *ante*, at 300–301, but also with the general rule that the burden of proof lies on "the party asserting the affirmative of a proposition," see, *e. g.*, *Mashpee Tribe* v. *New Seabury Corp.*, 592 F. 2d 575, 589 (CA1), cert. denied, 444 U. S. 866 (1979).

The moving party has the initial task of demonstrating to the Court that he has some valid objection to compliance. This showing might be made in various ways. Depending on the volume and location of the requested materials, the mere cost in terms of time, money, and effort of responding to a dragnet subpoena could satisfy the initial hurdle. Similarly, if a witness showed that compliance with the subpoena would intrude significantly on his privacy interests, or call for the disclosure of trade secrets or other confidential information, further inquiry would be required. Or, as in this case, the movant might demonstrate that compliance would have First Amendment implications.

The trial court need inquire into the relevance of subpoenaed materials only after the moving party has made this initial showing. And, as is true in the parallel context of pretrial civil discovery, a matter also committed to the sound discretion of the trial judge, the degree of need sufficient to justify denial of the motion to quash will vary to some extent with the burden of producing the requested information.[4]

---

[4] See, *e. g.*, *Northrop Corp.* v. *McDonnell Douglas Corp.*, 243 U. S. App. D. C. 19, 31, 751 F. 2d 395, 407 (1984) ("The need of the party seeking the documents is a relevant factor in considering a claim of oppressiveness, and a case may arise where the need is great enough to overcome a claim

For the reasons stated by the Court, in the grand jury context the law enforcement interest will almost always prevail, and the documents must be produced. I stress, however, that the Court's opinion should not be read to suggest that the deferential relevance standard the Court has formulated will govern decision in every case, no matter how intrusive or burdensome the request. See *ante*, at 301 ("The Court of Appeals accordingly did not consider these aspects of the subpoenas, nor do we").

I agree with the Court that what is "unreasonable or oppressive" in the context of a trial subpoena is not necessarily unreasonable or oppressive in the grand jury context. Although the same language of Rule 17(c) governs both situations, the teaching of *United States* v. *Nixon*, 418 U. S. 683 (1974), is not directly applicable to the very different grand jury context. Thus, I join in Parts I and II of the Court's opinion, and I am in accord with its decision to send the case back to the Court of Appeals. I also agree that the possible First Amendment implications of compliance should be con-

---

[of burdensomeness] such as [the State Department raises] here") (citation omitted); *In re Multi-Piece Rim Products Liability Litigation*, 209 U. S. App. D. C. 416, 424–425, 653 F. 2d 671, 679–680 (1981) ("relevance of discovery requests" must be weighed against "oppressiveness" "in deciding whether discovery should be compelled"); *United States* v. *Balistrieri*, 606 F. 2d 216, 221 (CA7 1979) ("The district court's decision to quash Balistrieri's discovery requests was within its discretion under the rule, especially in light of the breadth of the discovery requests in relation to the rather narrow ground of illegal surveillance upon which [his action] was based"), cert. denied, 446 U. S. 917 (1980); *Marshall* v. *Westinghouse Electric Corp.*, 576 F. 2d 588, 592 (CA5 1978) (plaintiff seeking broad range of documents "must show a more particularized need and relevance"); *Litton Industries, Inc.* v. *Chesapeake & Ohio R. Co.*, 129 F. R. D. 528, 530 (ED Wis. 1990) (" 'If it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause' ") (citation omitted); *Lloyd* v. *Cessna Aircraft Co.*, 430 F. Supp. 25, 26 (ED Tenn. 1976) (requiring "special need" to justify deposition in view of short notice afforded deposed party).

sidered by that court. I would only add that further inquiry into the possible unreasonable or oppressive character of this subpoena should also take into account the entire history of this grand jury investigation, including the series of subpoenas that have been issued to the same corporations and their affiliates during the past several years, see *In re Grand Jury 87–3 Subpoena Duces Tecum*, 884 F. 2d 772, 774–775 (CA4 1989).