**SENATE SELECT COMMITTEE ON ETHICS, Applicant,**

**v.**

**Senator Bob PACKWOOD, Respondent.**

**Misc. No. 93–0362 (TPJ).**

United States District Court, District of Columbia.

Jan. 24, 1994.

Michael Davidson, Senate Legal Counsel, Ken U. Benjamin, Jr., Deputy Senate Legal Counsel, Morgan J. Frankel, Claire M. Sylvia, Asst. Senate Legal Counsel, Washington, DC, for Senate Select Committee.

Jacob A. Stein, Robert F. Muse, Stein, Mitchell & Mezines, Washington, DC, for Senator Packwood.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

The Select Committee on Ethics of the United States Senate ("Ethics Committee" or "Committee") has applied to this Court for judicial enforcement of its subpoena *duces tecum* served upon respondent Senator Bob Packwood on October 21, 1993.[1] The subpoena commands that the respondent produce for the Committee's inspection entries covering the period January 1, 1989, to the present in a personal diary or diaries Senator Packwood has kept of his daily activities since 1969. The Committee issued the sub-

poena in conjunction with its preliminary inquiry into allegations that Senator Packwood has over the years sexually harassed certain women, has threatened potential witnesses to and complainants of such harassment to dissuade their coming forward with evidence, and has misused his senatorial staff to the same purpose.

Senator Packwood resists enforcement of the subpoena on the ground that it is overly broad and exceeds the appropriate scope of the Ethics Committee's preliminary inquiry. He also asserts that it violates rights guaranteed him by the Fourth and Fifth Amendments to the U.S. Constitution. For the following reasons, the application to enforce the subpoena will be granted.

### I.

The record before the Court establishes that on December 1, 1992, the Ethics Committee directed its staff to begin an investigation into widely publicized allegations that Senator Packwood had repeatedly made uninvited and unwelcome sexual overtures to numerous women during his tenure in the United States Senate. The Ethics Committee formally notified Senator Packwood on February 4, 1993, that its inquiry was focused on allegations of sexual misconduct, but would also include charges of witness intimidation and misuse of staff to impede the investigation.

Since his first election to the Senate in 1969, Senator Packwood has maintained a personal diary or diaries in which he records his observations of public events, but also includes highly personal reflections and information about his private life. Senator Packwood's practice has been to dictate the entries to be made in the diaries on audiotapes which are then transcribed by his personal secretary. The Ethics Committee personally deposed Senator Packwood on Octo-

---

1. This Court has jurisdiction under 28 U.S.C. § 1365(a), which confers upon it "original jurisdiction ... over any civil action brought by the Senate or any authorized committee or subcommittee of the Senate to enforce ... any subpena [sic] or order issued by the Senate or committee or subcommittee of the Senate...."

Section 1365(b) states: "Upon application by the Senate or any authorized committee or sub-

committee of the Senate, the district court shall issue an order to an entity or person refusing, or failing to comply with, or threatening to refuse or not to comply with, a subpena [sic] or order of the Senate or committee or subcommittee of the Senate requiring such entity to comply forthwith."

ber 5, 1993, during which he disclosed that in preparation for his deposition he had "scanned" his diaries covering a period of approximately ten years, and acknowledged that they did in fact contain entries directly relevant to the Ethics Committee's preliminary inquiry. On October 6, 1993, the Committee requested that Senator Packwood submit his diaries to enable them to be inspected for relevant material.[2]

After negotiations between Senator Packwood and his attorneys and the Ethics Committee, it was agreed that the Ethics Committee would be permitted to review the diaries after Senator Packwood had first "masked" certain entries for which he could legitimately invoke an attorney-client or physician-patient privilege, or that pertained only to personal, private family matters. Senator Packwood and the Ethics Committee further agreed that at no time would the Committee retain custody of the diaries, nor would the Committee staff even make notes of diary material, but would mark, for copying by Senator Packwood, those entries appearing to be relevant, the copies of the designated entries then to be furnished to the Ethics Committee. Finally, counsel for Senator Packwood would be allowed to be present while the Ethics Committee staff reviewed the original diaries for relevant entries.[3]

Senator Packwood started providing the original diaries to the Ethics Committee on October 12, 1993. As the Committee staff examined the diaries, counsel for Senator Packwood informed them that Senator Packwood had taken it upon himself to mask certain entries which he believed to contain extremely personal information[f] about third parties—not merely about Senator Packwood or his family—and not otherwise entitled to concealment as privileged under the agreed criteria. The Ethics Committee at first acceded to several isolated instances of such unauthorized masking, and even declined an offer by Senator Packwood to allow it to verify the nature of the information he had obscured from view.

On October 17, 1993, however, Ethics Committee staff marked for copying certain diary entries which suggested that Senator Packwood may have engaged in unrelated and hitherto unsuspected misconduct, namely, the solicitation of employment for his estranged wife from entities or individuals who possessed an interest in the affairs of a Senate subcommittee upon which Senator Packwood served. Counsel for Senator Packwood then informed the Committee he would henceforth be concealing material of his choosing which did not fall within one of the three categories originally approved for masking before submitting a diary to the Committee, to which the Committee staff objected, and, on October 18, 1993, Committee counsel first raised the possibility that it might be necessary to resort to a subpoena.

Senator Packwood then suspended further cooperation with the Ethics Committee with respect to the diaries. He refused to give it copies of relevant entries from diaries already reviewed and marked for copying, and announced that he intended henceforth to mask all "entries which relate to political, campaign, staff or similar activities and are wholly unrelated to the sexual misconduct/intimidation issues."[4] He also insisted, as a

---

2. The Committee had requested Senator Packwood to turn over voluntarily any papers or documents that might be relevant to the inquiry at the outset, and he complied by producing a significant quantity of papers responsive to the request.

   Counsel for the Ethics Committee became aware of the existence of the diaries prior to Senator Packwood's deposition, but he assumed that because Senator Packwood had not furnished them to the Ethics Committee pursuant to its request, they did not contain any relevant material. *See* Declaration of Victor M. Baird, Chief Counsel of the Senate Select Committee on Ethics at 5 ("Baird Declaration").

3. Counsel for Senator Packwood inquired as to whether the Ethics Committee would be willing to ignore material suggestive of other instances of arguable misconduct encountered during its examination of the diaries, to which counsel for the Committee demurred, stating that he had no authority to make such a commitment. Staff members are obliged by Committee rules to report any information coming to their attention bearing upon possible misconduct of Members of the Senate. Baird Declaration at 8–9.

4. *See* Letter from James F. Fitzpatrick and Daniel A. Rezneck to Senator Richard H. Bryan and Senator Mitch McConnell at 2 (Oct. 20, 1993),

condition of his continued cooperation, that the Ethics Committee defer investigation of any other instances of potential misconduct until after it had completed its inquiry into the original allegations. The Ethics Committee refused to assent to either condition, and voted unanimously on October 20, 1993, to issue a subpoena requiring the respondent to surrender his diaries from January 1, 1989 to the present.

The subpoena as drafted commands the respondent to produce

[a]ll diaries, journals, or other documents or material, including all typewritten or handwritten documents, as well as tape recordings and all material stored by computer or electronic means, that are in your possession, custody or control, which were prepared by or at the direction of Senator Bob Packwood, recording or describing Senator Bob Packwood's daily activities for January 1, 1989 through the present.[5]

The Committee has represented in its papers in this Court and at the hearing on this matter that the subpoena is intended only to reach, and to require the production of, what all concerned understand to be "Senator Packwood's diaries," in whatever form they are presently to be found, and then only upon the terms and conditions upon which the parties had originally agreed when their voluntary production was anticipated.[6]

The Ethics Committee voted unanimously on October 21, 1993, to report to the full Senate a resolution to enforce the subpoena. S.Res. 153, 103d Cong., 1st Sess. (1993).[7] The Senate began debate over the enforce-

ment resolution on November 1, 1993. After the first day of debate had concluded, Senator Packwood offered to turn over diary entries which he alone determined to be "relevant" to the scope of the original inquiry as defined on February 4, 1993. The Ethics Committee again rejected the offer, and debate upon enforcement of the subpoena resumed the next day, concluding with the full Senate voting 94 to 6 on November 2, 1993, to adopt Resolution 153, which instructs Senate legal counsel to seek judicial enforcement of the subpoena *duces tecum* in this Court.

## II.

Senator Packwood contends that the reach of the Ethics Committee's subpoena exceeds its legitimate grasp, in that it calls for him to divulge portions of the diaries which are not relevant to the Committee's investigation into allegations of sexual misconduct, witness intimidation and misuse of staff. In essence, Senator Packwood asserts that each diary entry should be considered as a separate document, and contends that the Ethics Committee may only require that he produce those entries which relate directly to its original investigation as defined on February 4, 1993.

This Court, however, has no authority to restrict the scope of the Ethics Committee's investigation. The cases upon which Senator Packwood relies provide no support for such a proposition.[8] In determining the proper scope of a legislative subpoena, this Court may only inquire as to whether the documents sought by the subpoena are " 'not

---

attached as Exhibit 8 to Application to Enforce Subpoena of Senate Select Committee on Ethics.

5. Subpoena of the Senate Select Committee on Ethics (Oct. 20, 1993), attached as Exhibit 9 to Application to Enforce Subpoena of Senate Select Committee on Ethics.

6. A respected intermediary, Kenneth W. Starr, Esq., a former federal judge and Solicitor General of the United States, has been retained by the Committee as a hearing examiner to verify that such masking as Senator Packwood undertakes is appropriately limited as originally agreed before submission of the diaries to the Committee.

7. Pursuant to sections 703(b) and 705 of the Ethics in Government Act of 1978, 2 U.S.C. §§ 288b(b) and 288d (1988), Senate legal counsel

may only initiate a civil action to enforce a subpoena upon the adoption of a resolution by the full Senate authorizing such proceedings.

8. *Watkins v. United States*, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957), and *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963), hold only that legislative investigative bodies must have a proper legislative purpose, and must inform subjects of the inquiry of the nature of that purpose to justify the compulsory production of evidence. Neither the legitimacy of the Committee's purpose nor Senator Packwood's awareness of it are in dispute here.

plainly incompetent or irrelevant to any lawful purpose [of the Subcommittee] in the discharge of [its] duties.'" *McPhaul v. United States*, 364 U.S. 372, 381, 81 S.Ct. 138, 143, 5 L.Ed.2d 136 (1960) (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943)).

The Constitution itself confers upon the Senate the power to discipline its Members for "disorderly [b]ehaviour," U.S. Const. art. I, § 5, cl. 2, and to that end the Senate has established its Ethics Committee to receive complaints and investigate allegations of improper conduct, including violations of law, Senate rules, and the Senate Code of Official Conduct. The Senate has authorized the Ethics Committee to issue subpoenas for such documentary material "as it deems advisable," and Congress has by legislation made such subpoenas judicially enforceable in this federal district court.[9]

Senator Packwood correctly observes that the records sought must at least be "pertinent" to the congressional inquiry. *See Rumely v. United States*, 197 F.2d 166, 177 (D.C.Cir.1952). Yet it is undisputed—indeed, acknowledged by respondent himself—that his diaries contain at least some information which is relevant to the Ethics Committee's investigation, and it is manifestly impracticable to leave to the subject of the investigation alone the determination of what information may or may not be probative of the matters being investigated. Senator Packwood has rejected any suggestion that this Court, or some other neutral arbiter, do so.

■ Senator Packwood's principal apprehension appears to be that somewhere within the diaries will be found evidence of other conduct presently not within anyone's contemplation (other than perhaps his own) that the Ethics Committee will deem to be senatorial misbehavior. Yet where, as here, an investigative subpoena is challenged on relevancy grounds, the Supreme Court has stated that the subpoena is to be enforced "unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the . . . investigation." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301, 111 S.Ct. 722, 727, 112 L.Ed.2d 795 (1991). Because the Ethics Committee possesses the power to investigate allegations of misconduct, and the diaries contain entries pertinent to this inquiry, the subpoena is not impermissibly broad, even though the diaries might prove compromising to Senator Packwood in respects the Committee has not yet foreseen.

At this stage of its proceedings the Ethics Committee is performing the office of a legislative branch equivalent of a grand jury, in furtherance of an express constitutional grant of authority to Congress to keep its own house in order. It is well-established that such investigative bodies enjoy wide latitude in pursuing possible claims of wrongdoing, and the authority of the courts to confine their investigations is extremely limited. "The function of the grand jury is to inquire about all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *R. Enterprises, Inc.*, 498 U.S. at 297, 111 S.Ct. at 726.

### III.

Senator Packwood next argues that the subpoena violates his right to privacy under the Fourth Amendment to the U.S. Constitution,[10] complaining that the subpoena authorizes the Ethics Committee to "rummage" through his most private thoughts and reflections and intimate details of his personal life.

■ The Fourth Amendment serves primarily to protect the right of privacy. *Warden v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967); *O'Connor v. Ortega*, 480 U.S. 709, 730, 107 S.Ct. 1492, 1504, 94 L.Ed.2d 714 (1987) (Scalia, J., concurring). And, as Senator Packwood notes,

---

**9.** S.Res. 338, 88th Cong. § 3(a) (1964) (as amended), S.Prt. No. 32, 103d Cong., 1st Sess. (1993).

**10.** The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall be violated...." U.S. Const. amend. IV.

numerous courts have recognized the special nature of personal papers such as diaries to which they have accorded the greatest respect, and hence the broadest of constitutional protections. *See, e.g., Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *Nixon v. Freeman,* 670 F.2d 346 (D.C.Cir.1982); *United States v. Bennett,* 409 F.2d 888 (2d Cir. 1969); *United States v. Poindexter,* 727 F.Supp. 1470 (D.D.C.1989).

■ Recognition of the peculiarly sensitive nature of personal diaries, and the Court's duty to protect them from unreasonable government intrusion, however, does not end the inquiry into whether the proposed "search" of them that will ensue if the Committee's subpoena is enforced in this action violates the Constitution. "A determination of the standard of reasonableness applicable to a particular class of searches requires 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *O'Connor,* 480 U.S. at 719, 107 S.Ct. at 1498–99 (citations omitted). This Court must thus balance Senator Packwood's expectations of privacy in his personal diaries against the Ethics Committee's interest in examining them for evidence of misconduct, and the nature of the scrutiny it proposes to give them.

The interest of the Ethics Committee and the manner in which it has examined and will continue to examine Senator Packwood's diaries satisfy this Court that the Fourth Amendment's standard of "reasonableness" has been met. As previously noted, the Ethics Committee is the Senate's tribunal of first resort responsible for enforcing the Senate's express constitutional power to discipline its members for misconduct.[11] As such it endeavors to ensure the integrity of the Members of the Senate, and in doing so to main-

tain public confidence in the Senate as an institution, the importance of which the Supreme Court has expressly recognized in measuring the reasonableness of a search under the Fourth Amendment. *In re Chapman,* 166 U.S. 661, 668–69, 17 S.Ct. 677, 680, 41 L.Ed. 1154 (1897).

The protocol to be followed in the examination of Senator Packwood's diaries appears to be far more solicitous of respondent's sensitivities than were those procedures approved in *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) and *Nixon v. Freeman,* 670 F.2d 346 (D.C.Cir.1982). The Ethics Committee proposes to conduct a focused, temporally limited review of a fraction of the diaries of most recent origin with many passages masked to protect the most vital of Senator Packwood's interests in privacy. The examination will occur in the presence of Senator Packwood's counsel, and the original diaries will be returned immediately to Senator Packwood, marked only to identify the entries perceived as relevant by the Committee for Senator Packwood to copy for it.

It would be presumptuous for this Court to find the Ethics Committee's procedure to represent an "unreasonable" search when the Supreme Court and its own Circuit Court of Appeals have sustained a more extensive and intrusive examination of similar private papers and recordings of a former President in the vindication of a governmental interest in the "historical" legacy of the nation, surely no more compelling than that of preserving the probity of the United States Senate in the public's perception and in fact.

### IV.

■ Finally, Senator Packwood maintains that enforcement of the subpoena will violate his right against self-incrimination guaranteed by the Fifth Amendment.[12] Relying

---

11. It is also significant that the Senate may, with respect to certain kinds of senatorial misbehavior, be the only tribunal with the power to punish. The "Speech and Debate" clause declares, "[F]or any Speech or Debate in either House, [Senators or Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1, which has been held to confer immuni-

ty from prosecution on Senators for any "legislative acts," including those corruptly performed. *See United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

12. The Fifth Amendment declares, "No person . . . shall be compelled in any criminal case to be

principally on the case of *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), he contends that the Constitution prohibits the compelled disclosure of private papers such as his diaries which contain potentially incriminating entries or statements. In *Boyd*, the Supreme Court reversed a criminal conviction procured in part with business records seized by government agents, stating "[W]e have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." *Id.* at 633, 6 S.Ct. at 534.

Senator Packwood concedes that much of *Boyd's* vitality with respect to business records such as were at issue in that case has evaporated with decisions in subsequent cases, but nonetheless maintains that the Supreme Court has never expressly overruled the case with regard to personal papers such as diaries. In more recent cases, however, the Supreme Court has largely repudiated the expansive language of *Boyd* importing an absolute Fifth Amendment protection for incriminating documentary evidence sought by compulsion. In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Supreme Court held that the privilege obtains only if the *act* of producing papers or records, by itself, would have communicative or testimonial aspects which could incriminate the individual compelled to produce them, but it does not protect against their incriminating *contents* voluntarily committed to paper before the government makes demand for them.[13]

## V.

In summary, the Ethics Committee subpoena commands the production of personal diaries of Senator Packwood which are unquestionably relevant in some part to a constitutionally authorized and properly focused inquiry by a committee of the U.S. Senate having jurisdiction to investigate allegations of misconduct of a Member of that body. While the material sought to be examined is acknowledged to be extremely personal and private in nature, and merits an appropriately exalted degree of constitutional protection, the manner in which the Ethics Committee will review these diaries respects Senator Packwood's legitimate expectations of privacy and is, therefore, "reasonable" under the Fourth Amendment. Finally, Senator Packwood enjoys no Fifth Amendment privilege to avoid surrendering his personal diaries to the Ethics Committee, the act itself presenting no risk of incrimination beyond that he has already reduced to written or recorded form.

Therefore, it is, this 24th day of January, 1994,

ORDERED, that the application of the Senate Select Committee on Ethics to enforce the subpoena *duces tecum* served on Senator Bob Packwood on October 21, 1993, is granted; and it is

FURTHER ORDERED, that the parties shall appear for a status conference on January 27, 1994, at 9:30 a.m. to settle upon procedures for the production of Senator Packwood's diaries for inspection by the Ethics Committee that will accommodate the several interests concerned.

---

a witness against himself...." U.S. Const. amend. V.

**13.** The Supreme Court recognized that compelled production of documents could constitute an admission of the existence of and defendant's control over such papers, as well as provide a means to authenticate them. *See Fisher,* 425 U.S. at 410, 96 S.Ct. at 1581; *Doe,* 465 U.S. at 612, 104 S.Ct. at 1242.

Senator Packwood has conceded both the existence and his possession of the diaries, and their authenticity as well.