**In re: GRAND JURY SUBPOENA, Judith MILLER**

**No. 04–3138, 04–3139, 04–3140.**

United States Court of Appeals, District of Columbia Circuit.

April 19, 2005.

Reid Alan Cox, Alexandria, VA, Bruce W. Sanford, Robert Douglass Lystad, Michael Lewis Powell, Baker & Hostetler, Theodore J. Boutrous, Jr., Thomas H. Dupree, Jr., Gibson, Dunn & Crutcher, Victoria Toensing, diGenova & Toensing LLP, Washington, DC, for Amicus Curiae for Appellants.

Before: GINSBURG, Chief Judge; and EDWARDS, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL,\* GARLAND,\*\* and ROBERTS,\*\* Circuit Judges.

### ORDER

PER CURIAM.

Appellants' petition for rehearing en banc, the response thereto, and the brief of amici curiae in support of appellants have been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular, active service did not vote in favor of the petition. Upon consideration of the foregoing and the emergency motion for expedited consideration of the petition for rehearing en banc, it is

**ORDERED** that the petition for rehearing en banc be denied. It is

**FURTHER ORDERED** that the emergency motion for expedited consideration of the petition for rehearing en banc be dismissed as moot.

TATEL, Circuit Judge, concurring in the denial of rehearing en banc.

Although en banc review is "not favored," Fed. R.App. P. 35(a), and although all three panel members agreed on the result in this case—i.e., that two subpoenaed reporters can be compelled to give grand jury testimony—petitioners seek reconsideration of three issues: their assertion of a common law privilege under Federal Rule of Evidence 501; their claim to

---

\* A separate statement of Circuit Judge TATEL concurring in the denial of the rehearing en banc is attached.

\*\* Circuit Judges GARLAND and ROBERTS did not participate in this matter.

First Amendment protection; and their due process challenge to the district court's use of ex parte evidence.

Regarding the common law issue, while I believe that "reason and experience," Fed.R.Evid. 501, support a qualified privilege for reporters' confidential sources, *see In re Grand Jury Subpoena, Judith Miller,* 397 F.3d 964, 989 (D.C.Cir.2005) (Tatel, J., concurring), I concur in the court's denial of en banc review. Judge Henderson's opinion—which, as the narrowest supporting the result, is the controlling decision of the court—determined neither whether any common law privilege exists nor what standard would govern its application if it did. *See id.* at 981–82 (Henderson, J., concurring); *see also id.* at 976–77 (Sentelle, J., concurring); *id.* at 989–91 (Tatel, J., concurring). Hence, future panels of this court remain free to recognize any privilege (or no privilege) consistent with the result in this case, and those panels may, as necessary, clarify the standards governing reporter-source relationships. Given that the panel here agreed unanimously on the result, this particular case presents no question of "exceptional importance" in the sense required by our rule on en banc review. Fed. R.App. P. 35(a)(2).

En banc review is likewise unnecessary with respect to the First Amendment issue. True, this court's decisions interpreting *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), are somewhat conflicted. For example, we have stated in civil litigation that "[c]ompelling a reporter to disclose the identity of a confidential source raises obvious First Amendment problems," *Zerilli v. Smith,* 656 F.2d 705, 710 (D.C.Cir.1981), while maintaining with respect to grand juries that "[a] newsman can claim no general immunity, qualified or otherwise," unless "questions are put in bad faith for the purpose of harassment," *In re Possible Violations of 18 U.S.C. 371, 641, 1503,* 564 F.2d 567, 571 (D.C.Cir.1977). But factual similarities between this case and *Branzburg* prevent this court from recognizing a First Amendment privilege here. *See In re Grand Jury Subpoena,* 397 F.3d at 988 (Tatel, J., concurring). Only the Supreme Court can limit or distinguish *Branzburg* on these facts.

Finally, petitioners offer no compelling reason to reconsider the panel's ruling on the due process issue. Claiming a right to review evidence used to find them in contempt, petitioners object to the district court's and panel's reliance on ex parte submissions to determine that any conceivable privilege was overcome. But barring an absolute privilege—something no federal common law decision endorses and that *Branzburg* forecloses as a First Amendment matter—reporters either enjoy no privilege, in which case compelling their testimony requires no evidence at all, or they hold a qualified privilege, that is, a privilege subject to exceptions, much like the crime-fraud exception to the attorney-client privilege, *see, e.g., United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), and the imminent-harm exception for psychotherapist-patient communications, *see Jaffee v. Redmond,* 518 U.S. 1, 18 n. 19, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). If the privilege is qualified, then ex parte review, far from violating due process, affords a critical protection to journalists: it permits the court to demand a detailed showing by the government that it has satisfied the criteria for overcoming the privilege.

I certainly understand petitioners' preference for reviewing the evidence themselves, but given the " 'indispensable secrecy of grand jury proceedings,' " *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 299, 111 S.Ct. 722, 112 L.Ed.2d 795

(1991) (quoting *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943)), it can hardly represent an abuse of discretion for the district court to deny them that option. Telling one grand jury witness what another has said not only risks tainting the later testimony (not to mention enabling perjury or collusion), but may also embarrass or even endanger witnesses, as well as tarnish the reputations of suspects whom the grand jury ultimately declines to indict. Strong guarantees of secrecy are therefore critical if grand juries are to obtain the candid testimony essential to ferreting out the truth. *See generally In re Grand Jury Subpoena*, 397 F.3d at 973–74 (discussing reasons for grand jury secrecy). Accordingly, we have approved of ex parte review in applying the crime-fraud exception to the attorney-client privilege—a context precisely analogous to application of a qualified reporter privilege. *See id.* at 1002 (Tatel, J., concurring) (citing *In re Sealed Case No. 98–3077*, 151 F.3d 1059, 1075 (D.C.Cir.1998) (per curiam)).

Attempting to manufacture a circuit conflict on this issue, petitioners cite language in *United States v. Alter*, 482 F.2d 1016 (9th Cir.1973), and *In the Matter of Kitchen*, 706 F.2d 1266 (2d Cir.1983), contemplating an "uninhibited adversary hearing" in civil contempt proceedings. *See Alter*, 482 F.2d at 1024; *Kitchen*, 706 F.2d at 1272. Yet neither case remotely resembles this one. *Alter* dealt with alleged illegal surveillance of discussions between a grand jury witness and his attorney, a matter requiring no review of secret grand jury materials, *see* 482 F.2d at 1024–25, and *Kitchen* involved contempt findings based on the alleged implausibility of a witness's claimed failure of memory—a situation more akin to punishment for perjury than evaluation of a privilege claim, *see Kitchen*, 706 F.2d at 1272 (identifying a need for "heightened" procedural protec-

tion "[w]hen a case is in the grey area between contempt and perjury"). Nor do petitioners' other authorities involve compulsion of testimony due to failure of an asserted privilege. While expressing caution regarding use of secret evidence, they deal, respectively, with retraction of security clearance, punishment for false testimony, and denial of visas. *See Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Abourezk v. Reagan*, 785 F.2d 1043 (D.C.Cir.1986), *aff'd by an equally divided court*, 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987). Unlike in those cases, the disputed evidence here relates to the government's conduct of its investigation, not the witness's own conduct. Moreover, again unlike in those cases, the reporters here face only a coercive penalty, not punishment for past actions. To avoid incarceration, they need not persuade the district judge that any accusation against them is false; they need only abandon their unlawful resistance and testify before the grand jury. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

The better analogy is *R. Enterprises*, where the Supreme Court approved of ex parte proceedings to determine the reasonableness of grand jury subpoenas. Although denial of a reasonableness-based motion to quash may expose witnesses to coercive measures (including incarceration) no less than denial of a claimed privilege, the Court observed that "to ensure that subpoenas are not routinely challenged as a form of discovery, a district court may require that the Government reveal the subject of the investigation to the trial court *in camera*, so that the court may determine whether the motion to quash has a reasonable prospect for success before it discloses the subject matter to the

challenging party." *R. Enterprises,* 498 U.S. at 302, 111 S.Ct. 722; *cf. Abourezk,* 785 F.2d at 1061 (describing in camera review of subpoenaed evidence "for the limited purpose of determining whether the asserted privilege is genuinely applicable" as a "notabl[e]" exception to the rule against secret evidence).

In short, because none of petitioners' claims meets our high standard for recon-sideration by the en banc court, I join in denying their petition.