In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1845
UNITED STATES OF AMERICA,
 Respondent-Appellant,
 v.

DOE CORPORATION,
 Petitioner-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Eastern District of Wisconsin.
 No. 2:22-mc-00001-JPS-NJ — J. P. Stadtmueller, Judge.
 ____________________

 ARGUED DECEMBER 8, 2022 — DECIDED FEBRUARY 3, 2023
 ____________________

 Before RIPPLE, ROVNER, and WOOD, Circuit Judges.
 WOOD, Circuit Judge. Doe Corporation is the target of a fed-
eral grand-jury investigation. Pursuant to a search warrant,
federal and state agents conducted a day-long search of the
company’s premises. After the search, Doe Corporation ac-
cused the agents of serious misconduct and produced still im-
ages from its security-camera footage that appeared to show
agents pointing guns at employees. The government wanted
to know more, and so it served Doe Corporation with a grand-
2 No. 22-1845

jury subpoena for the original video footage. Doe Corporation
moved to quash the subpoena, and the district court granted
its request. Because the grand jury is entitled to inquire into
the circumstances surrounding the collection of evidence rel-
evant to its investigation, we reverse.
 I
 The federal government is investigating Doe Corporation
for suspected criminal violations of the Clean Water Act. See
33 U.S.C. §§ 1317(d), 1319(c)(2)(A). After obtaining a search
warrant, federal and state agents conducted a day-long search
of Doe Corporation’s premises. An hour into the search,
agents ordered Doe Corporation to turn oﬀ all security
cameras. 1 After the search, Doe Corporation contacted the
U.S. Attorney’s Oﬃce and accused the agents of executing the
search in a dangerous and threatening manner in violation of
the corporation’s Fourth Amendment rights. See G.M. Leasing
Corp. v. United States, 429 U.S. 338, 353 (1977). Doe
Corporation also ﬁled an emergency motion to unseal the
aﬃdavit supporting the search warrant. The motion included
still images from security-camera video footage of the search;
the images showed agents pointing guns at employees.
 The government promptly acknowledged the seriousness
of the allegations and asked to view the original video footage
from the security cameras. Doe Corporation refused that re-
quest. The government then served Doe Corporation with a
grand-jury subpoena for the video.

 1 The government represents that this step was taken for safety rea-

sons. That strikes us as odd, but the question whether, by so doing, the
agents were engaged in misconduct is not before us.
No. 22-1845 3

 Doe Corporation moved to quash the subpoena under
Federal Rule of Criminal Procedure 17(c)(2) on the ground
that the video was irrelevant to the potential Clean Water Act
violations that the grand jury was investigating. It further ar-
gued that the subpoena was for the improper purpose of con-
ducting pre-trial discovery in advance of Doe Corporation’s
criminal trial or for potential civil litigation over the alleged
constitutional violation.
 The government oﬀered two reasons why there was a rea-
sonable possibility that the video would be relevant to the
grand jury’s investigation. First, “the grand jury is entitled to
consider potential evidence of law enforcement misconduct
in evaluating whether to indict.” Second, the video could be
directly relevant to whether Doe Corporation committed
Clean Water Act violations, because the video could provide
details on such questions as what evidence was collected dur-
ing the search, which employees had access to evidence, and
whether anyone tampered with potential evidence.
 The district court granted Doe Corporation’s motion to
quash the subpoena, holding that the video was not relevant
to the grand jury’s investigation. The court ﬁrst rejected the
government-misconduct theory of relevance. Any miscon-
duct was beside the point, it thought, because the grand jury
is entitled to consider evidence regardless of its admissibility.
The district court thus reasoned that “the manner, or fairness,
of the search” cannot factor into the grand jury’s decision to
indict. The court then rejected the substantive relevance the-
ory, reasoning that the agents would not have ordered the se-
curity cameras to be shut down if the footage was so im-
portant. It added that the agents’ testimony could substitute
for the security footage. The district court concluded that the
4 No. 22-1845

subpoena was issued for the “improper purpose” of “as-
sess[ing] whether the fruits of the search warrant are vulner-
able to pre trial suppression motions,” which it considered a
form of impermissible pre-trial discovery.
 II
 We review a district court’s grant of a motion to quash a
grand-jury subpoena for abuse of discretion. See Horne v. Elec.
Eel Mfg. Co., Inc., 987 F.3d 704, 726 (7th Cir. 2021); In re Special
Apr. 1977 Grand Jury, 581 F.2d 589, 595 (7th Cir. 1978). A court
abuses its discretion when it bases its decision on a legal error.
United States v. Chaparro, 956 F.3d 462, 474 (7th Cir. 2020).
 The grand jury “serves the ‘dual function of determining
if there is probable cause to believe that a crime has been com-
mitted and of protecting citizens against unfounded criminal
prosecutions.’” United States v. Sells Eng’g, Inc., 463 U.S. 418,
423 (1983) (quoting Branzburg v. Hayes, 408 U.S. 665, 686–87
(1972)). To carry out these duties, the grand jury has broad
authority to investigate potential wrongdoing and, if wrong-
doing is discovered, to decide whether to return a criminal
indictment. United States v. Calandra, 414 U.S. 338, 343 (1974).
 Among the grand jury’s investigatory tools is the power
to issue subpoenas. This power is broad but not unlimited.
Under Federal Rule of Criminal Procedure 17(c)(2), a district
court may quash or modify a subpoena that is “unreasonable
or oppressive.” The party opposing the subpoena bears the
burden of proving its unreasonableness or oppressiveness.
United States v. R. Enterprises, Inc., 498 U.S. 292, 293 (1991).
 Rule 17(c)(2) does not define what makes a subpoena “un-
reasonable or oppressive,” and the Supreme Court has em-
phasized that this depends on context. R. Enterprises, Inc., 498
No. 22-1845 5

U.S. at 299. When a trial subpoena is issued after an indict-
ment and in anticipation of trial, it must be a “reasonably spe-
cific request for information that would be both relevant and
admissible at trial.” Id. (citing United States v. Nixon, 418 U.S.
683, 700 (1974)). But the Supreme Court rejected this formula-
tion of 17(c)(2)’s reasonableness standard as too demanding
in the context of grand-jury subpoenas. The grand jury often
does not decide which offenses and offenders to charge until
its investigation concludes, and so “[o]ne simply cannot know
in advance whether information sought during the investiga-
tion will be relevant and admissible in a prosecution for a par-
ticular offense.” Id. at 299–300. The Court therefore rejected
the requirement that evidence sought by grand-jury sub-
poena be admissible and left only the narrowest of paths open
to a relevance challenge. A motion to quash a grand-jury sub-
poena on relevance grounds “must be denied unless the dis-
trict court determines that there is no reasonable possibility
that the category of materials the Government seeks will pro-
duce information relevant to the general subject of the grand
jury’s investigation.” Id. at 301.
 The question before us is whether there is any “reasonable
possibility” that the video footage of the search of Doe
Corporation’s premises is “relevant to the general subject of
the grand jury’s investigation.” The district court thought not.
Because the grand jury may view evidence regardless of its
admissibility, the court reasoned, the grand jury had no
legitimate interest in examining how the search was
conducted. This was too narrow a view of the grand jury’s
powers. It is well within the legitimate purview of the grand
jury to inquire about the manner in which evidence was
collected, including whether any government misconduct
occurred in the process.
6 No. 22-1845

 As we have noted, a grand jury’s responsibility does not
begin and end with determining whether there is probable
cause to believe a crime has been committed. The Supreme
Court has expressly recognized that the grand jury “is not
bound to indict in every case where a conviction can be ob-
tained.” Vasquez v. Hillery, 474 U.S. 254, 263 (1986). And even
where the grand jury decides to indict, it may choose whether
“to charge a greater offense or a lesser offense; numerous
counts or a single count; and perhaps most significant of all,
a capital offense or a noncapital offense—all on the basis of
the same facts.” Id. This discretion permits the grand jury to
“serv[e] as a kind of buffer or referee between the Govern-
ment and the people.” United States v. Williams, 504 U.S. 36, 47
(1992).
 We need not exhaustively list the grounds upon which a
grand jury may choose not to indict. But surely one such rea-
son is if there is no admissible evidence to support the gov-
ernment’s case at trial. See Sells Eng’g, Inc., 463 U.S. at 430
(stating that a grand jury may decline to indict based on a
prosecutor’s recommendation “that the law and admissible ev-
idence will not support a conviction” (emphasis added)). Or
perhaps an investigation uncovers evidence of government
misconduct so outrageous that the grand jury is convinced
that the government harbors improper animus against the
target of the investigation. There is no basis in law that re-
quires us to bar the grand jury from taking these considera-
tions into account as it attempts to “ferret out crimes deserv-
ing of prosecution, or to screen out charges not warranting
prosecution.” Id. at 424.
 Because these considerations are within the legitimate
scope of the grand jury’s investigation, evidence with any
No. 22-1845 7

“reasonable possibility” of bearing upon them is relevant for
purposes of Rule 17(c)(2)’s limitation on the subpoena power.
R. Enterprises, Inc., 498 U.S. at 301. Given Doe Corporation’s
allegations about the government’s misconduct during the
search, we conclude that there is a reasonable possibility that
the security-camera footage the grand jury wants to see will
be relevant to the investigation.
 We note that even absent accusations of misconduct or in-
admissibility, it is difficult to see how video footage of the ex-
ecution of a search warrant has no possible relevance to the
grand jury’s investigation. Evidence may be collected in a
way that calls its reliability into question. That is why, for ex-
ample, the government maintains careful chain-of-custody
records. See 2 McCormick on Evidence § 213 (8th ed. 2022).
Conversely, search footage may bolster the reliability of the
collected evidence or point the grand jury toward further
lines of inquiry by, for instance, showing where incriminating
evidence was stored and who had access to the area.
 Doe Corporation’s remaining arguments for quashing the
subpoena are unavailing. It argues that the testimony of the
agents who conducted the search should be sufficient for the
grand jury’s purposes, especially given the order the agents
themselves gave to shut off all security cameras. In Doe Cor-
poration’s view, the government’s insistence on viewing the
video reveals that what it really wants is a sneak peek at the
evidence Doe Corporation may use in future litigation.
 But there is no “rule requiring the government to show
that the grand jury does not already have in its possession the
information that it seeks” by subpoena. United States v. Bell,
902 F.2d 563, 566 (7th Cir. 1990). The grand jury is entitled to
determine the depth of its investigation, and there is reason
8 No. 22-1845

enough here for the grand jury to prefer the video in lieu of
(or in addition to) the agents’ accounts. Doe Corporation
bears the burden of offering something more than pure spec-
ulation about the government’s improper motives. See R. En-
terprises, Inc., 498 U.S. at 300–01 (“[T]he law presumes, absent
a strong showing to the contrary, that a grand jury acts within
the legitimate scope of its authority.”) Because Doe Corpora-
tion has not provided any such evidence, it has not shown
that the subpoena was issued for an improper motive.
 III
 The grand jury is entitled to inquire into the circumstances
surrounding the collection of evidence relevant to its investi-
gation of Doe Corporation, including any government mis-
conduct that may have occurred in the process. We REVERSE
the district court’s grant of the motion to quash the grand jury
subpoena.