89 F.3d 836
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry Dean DUSENBERY, Defendant-Appellant.
 No. 94-3804.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1996.
 
 Before: GUY, NELSON, and BATCHELDER, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from a conviction for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. Proceeding pro se, the defendant, Larry Dusenbery, submits a broad array of objections to the proceedings in the trial court. We find none of the objections persuasive, and we shall affirm the conviction.
 
 
 2
 * The evidence introduced at trial established that Mr. Dusenbery had been involved in the distribution of cocaine since at least 1983. He was assisted by several individuals, including his mother, Mary Dusenbery, and his girlfriend, Terry Franjesh.
 
 
 3
 In 1986 Mr. Dusenbery was arrested and ultimately convicted on drug charges. In this connection he was incarcerated for a time at the Ashland Federal Correctional Institute in Kentucky. While there he met one Gus Kloszewski, who was able to provide a new and better source of supply for Mr. Dusenbery's operation. Still incarcerated, Dusenbery arranged for his subordinates to purchase cocaine from Kloszewski's organization for distribution in northeast Ohio.
 
 
 4
 The scheme ultimately unraveled as a result of an unrelated FBI investigation. While executing a search warrant as part of an investigation of labor racketeering, the FBI discovered that one of the subjects of the investigation had previously written a $6,000 check to Mary Dusenbery. Another subject of the investigation was incarcerated with Mr. Dusenbery. These circumstances led a grand jury to issue a subpoena for the "logger tapes" of telephone conversations conducted by Mr. Dusenbery while in prison. Information obtained from these tapes was used to obtain the conviction that is the subject of this appeal.
 
 
 5
 Mr. Dusenbery initially pleaded guilty to one count of engaging in a continuing criminal enterprise. After seeking unsuccessfully to withdraw the guilty plea, he challenged his conviction in a prior appeal. A panel of this court sustained the challenge. United States v. Dusenbery, No. 92-3791 (Oct. 4, 1993). Mr. Dusenbery was then retried on charges of continuing criminal enterprise and conspiracy, and was found guilty on both counts. At sentencing the district court, on a motion by the government, vacated the conspiracy conviction on the ground that it merged into the continuing criminal enterprise conviction.
 
 II
 
 6
 Suggesting that his trial transcripts were altered, Mr. Dusenbery argues that his due process rights were violated because the district court did not provide him with the original sound tapes from which the transcripts were made. An order of the district court provided that the tapes would be made available for review by a representative of Mr. Dusenbery in the presence of a representative of the court and, if desired, a representative of the U.S. Attorney's office. Such a measure, the court explained, was necessary to provide verification of the tapes for both parties. The order provided that once this procedure was followed, copies of the tapes would be made available to Mr. Dusenbery. The district court's order was upheld by this court on review. United States v. Dusenbery, No. 94-3804 (May 17, 1995). Mr. Dusenbery did not follow the established procedure, and we will not revisit our prior order. See Arizona v. California, 460 U.S. 605, 618 (1983).
 
 III
 
 7
 Mr. Dusenbery argues that the trial judge should have recused himself. As evidence of bias, Dusenbery points to the judge's refusal to allow withdrawal of the guilty plea--a refusal this court ultimately found improper.
 
 
 8
 Under 28 U.S.C. § 144, a trial judge should recuse himself when a party "makes and files a timely and sufficient affidavit that the judge ... has a personal bias or prejudice ... against him." Mr. Dusenbery never filed such an affidavit, and thus he was not entitled to recusal under 28 U.S.C. § 144. United States v. Sammons, 918 F.2d 592, 598-599 (6th Cir.1990). Nor should the judge have recused himself under 28 U.S.C. § 455(a), which provides for recusal by a judge "in any proceeding in which his impartiality might reasonably be questioned." In order to justify recusal under § 455(a), there must be "prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." Sammons, 918 F.2d at 599, quoting Wheeler v. Southland Corp., 875 F.2d 1246, 1251-52 (6th Cir.1989). The complaints about the trial judge's previous rulings do not meet this standard. Sammons, 918 F.2d at 599.
 
 IV
 
 9
 During the course of the investigation, the government obtained an order providing for electronic surveillance of several members of Mr. Dusenbery's distribution network. As a basis for the wiretap application, the government relied upon (a) transcripts of the defendant's drug-related conversations from the prison logger tapes and (b) an affidavit by FBI Agent John Graves. Mr. Dusenbery raises numerous objections to the use of this material.
 
 
 10
 First, he challenges the logger tape subpoena issued by the grand jury and argues that the district court abused its discretion by refusing to conduct in camera review of the grand jury proceedings. The grand jury subpoena was improper, he contends, because the grand jury was investigating labor racketeering activities and the materials subpoenaed were not relevant to the subject matter of that investigation. A grand jury, however, has broad investigative powers and may "inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." United States v. R. Enters., 498 U.S. 292, 297 (1991). It is for this reason that a grand jury subpoena may only be quashed where the district court "determine[s] that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." Id. at 301. In the case at bar the government discovered evidence that the defendant's mother--whose only known source of income was disability benefits--had received a $6,000 check from an individual who was suspected of involvement in labor racketeering activities. The grand jury could reasonably have concluded that Mr. Dusenbery's conversations with his mother were relevant to its investigation. The district court did not err in denying the motion for an in camera inspection of grand jury materials.
 
 
 11
 Mr. Dusenbery maintains that the original logger tapes were altered, and that he was denied effective assistance of counsel when his attorney failed to subpoena the original tapes.[1] We have been presented with no evidence of alteration, however. Mr. Dusenbery was not deprived of effective assistance of counsel, and he was not prejudiced by the failure to subpoena the tapes.
 
 
 12
 Mr. Dusenbery also argues that the district court erred by denying him an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978), so that he could challenge other components of the application for the electronic interception order. In this connection he contends that Agent Graves lied in the affidavit; that confidential informants referred to in the affidavit did not exist; and that pen register information obtained from his mother's telephone and cited in the affidavit had been falsified. A Franks hearing, however, is only mandated "if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false, and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." United States v. Campbell, 878 F.2d 170, 171 (6th Cir.), cert. denied, 493 U.S. (1989). We agree with the district court that Mr. Dusenbery failed to make the required preliminary showing. Even if the rest of the affidavit was falsified, moreover, the prison logger tapes alone were sufficient to establish probable cause.
 
 
 13
 Nor do we find any merit to the contention that the showing of need for a Franks hearing was bolstered because certain individuals--including government agents--refused to speak to Mr. Dusenbery's investigator. Absent any evidence that the government improperly influenced these people to maintain silence, this contention is irrelevant.
 
 
 14
 Mr. Dusenbery also complains of the district court's denial of a motion to let his defense counsel or a private investigator make copies of original information obtained from the pen register on his mother's telephone. The district court denied the motion on the ground that copies of the pen register information had already been given to the defendant through his previous attorney. Mr. Dusenbery argues that this information was insufficient because it did not allow him to verify that the calls were actually made from his mother's phone. In the absence of any evidence to suggest that the pen register information had been fabricated, we do not believe the district court erred in denying the motion.
 
 
 15
 In a related challenge, Mr. Dusenbery contends that evidence obtained from the wiretap should have been suppressed because Agent Graves fabricated facts in the application to meet the "necessity" requirement for a wiretap--the requirement that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed or to be too dangerous." 18 U.S.C. § 2518(3)(C). Mr. Dusenbery has not alleged any specific falsehoods in the affidavit concerning the necessity issue, however, and this challenge too is without merit.
 
 V
 
 16
 To convict a defendant of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, the government must prove "(1) a felony violation of a federal narcotics law; (2) as part of a 'continuing series of violations;' (3) 'in concert with five or more persons;' (4) for whom defendant is an organizer or supervisor; and (5) from which he derives substantial income." United States v. Ward, 37 F.3d 243, 247 (6th Cir.1994), cert. denied, 115 S.Ct. 1388 (1995). The "continuing series" element of the statute requires proof of three or more related narcotics violations. United States v. Sinito, 723 F.2d 1250, 1261 (6th Cir.1983), cert. denied, 469 U.S. 817 (1984).
 
 
 17
 To prove one of the predicate acts in the case at bar, the government introduced evidence that in 1983 Mr. Dusenbery had sold cocaine purchased with the proceeds of fraudulent banking activities. Mr. Dusenbery had been prosecuted for these activities, but his conviction was not introduced into evidence. Dusenbery argues here that introduction of the 1983 evidence constituted prejudicial error because he had been prosecuted for bank fraud, not for a violation of the drug laws. The evidence, however, clearly showed a narcotics violation. That bank fraud was also involved does not prevent the narcotics violation from being a predicate offense.
 
 
 18
 Mr. Dusenbery also argues that introduction of evidence concerning these 1983 activities was improper because the activities were "isolated," and thus not part of a "continuing series of violations." No objection was made on this basis, and our review is thus limited to the question whether plain error occurred.
 
 
 19
 Other circuits have read the word "continuing" in the statute as imposing a requirement "that the course of illicit conduct span a definite period of time," United States v. Jones, 801 F.2d 304, 307 (8th Cir.1986), and that the violations "be related to each other in some way," United States v. Edmonds, --- F.3d ----, 1996 WL 155187, at * 3 (3d Cir.1996) (en banc). The record in the case at bar demonstrates Mr. Dusenbery made his living selling cocaine from 1983 until the time of his indictment. At least one of the people with whom he was involved in criminal activity at the time of the indictment, his girlfriend Terry Franjesh, was involved with Mr. Dusenbery in the 1983 transactions. On this record we do not believe that the admission of evidence concerning the defendant's drug dealing in 1983 constituted plain error.
 
 VI
 
 20
 Mr. Dusenbery argues that the jury instructions should have told the jury which persons could be counted for purposes of meeting the requirement that the defendant be shown to have exercised management authority over five or more persons. Because the instructions were not objected to on this ground, we must apply the "plain error" rule here.
 
 
 21
 In United States v. Phibbs, 999 F.2d 1053, 1086-1087 (6th Cir.1993), cert. denied, 114 S.Ct. 1070 (1994), we held that where "the government did not mislead the jury concerning who, as a matter of law, could be deemed to be a supervisee of [the defendant]," there was no danger of undue jury confusion. Therefore, we concluded, it was not plain error to fail to instruct the jury who could not be counted for continuing criminal enterprise purposes. Id. In the case at bar, similarly, the jury was instructed that the government had to prove beyond a reasonable doubt "that the defendant and at least five or more other persons" participated in the enterprise and that "Mr. Dusenbery occupied some managerial or supervisory position with respect to the five individuals." In closing argument, the government identified six individuals over whom Mr. Dusenbery had exercised supervisory authority. The government carefully summarized the evidence of supervisory activities with respect to each of these people. There was nothing misleading about any of the government's statements. Based upon the record as a whole, we conclude that the jury could reasonably have found that Mr. Dusenbery exercised management authority over each of the six individuals named by the government. It was not plain error for the trial court to fail to instruct the jury that these, or any other individuals who might have been mentioned during the proceedings, could not be counted for purposes of meeting the five-person requirement.
 
 VII
 
 22
 At trial the government--over objection from Mr. Dusenbery--introduced evidence of the facts underlying the 1986 narcotics conviction (but not the conviction itself) for the purpose of establishing a predicate act. While the jury was deliberating, Mr. Dusenbery sent a handwritten note to the trial judge requesting a limiting instruction to the effect that this evidence could not be considered by the jury in regard to the conspiracy count of the indictment. Alternatively, Mr. Dusenbery argued that counsel's failure to request the instruction constituted ineffective assistance of counsel. He renews the ineffective assistance claim on appeal.
 
 
 23
 A claim of ineffective assistance of counsel requires both a showing that counsel was deficient and that the defendant was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). In this case, Mr. Dusenbery was obviously not prejudiced whether or not the conduct of his counsel was deficient. The trial judge stated that he would not have granted the limiting instruction even had it been timely requested.
 
 
 24
 And even were we to assume that the trial judge misspoke in his post-trial ruling and that the limiting instruction would have been granted if timely requested, we still would not find any prejudice to the defendant. The trial judge carefully instructed the jury as to the conduct required to find the charged conspiracy. The 1986 evidence--evidence that dealt with the defendant's lone conduct--was not in any way relevant to the charged conspiracy. There is thus no reason to believe that the jury might have considered the 1986 evidence in connection with the conspiracy count of the indictment. Nor, in light of the considerable other evidence that the defendant engaged in drug dealing activities, is there any reason to believe that the 1986 evidence impermissibly influenced the jury by making it believe that the defendant was more likely to engage in the charged conspiracy.
 
 
 25
 We are also unpersuaded by Mr. Dusenbery's argument that the trial judge should have appointed substitute counsel while considering the motion. The request was denied at a hearing where Mr. Dusenbery's attorney was present. At no point in the hearing did Dusenbery request substitute counsel for purposes of this motion. In these circumstances, the failure of the trial court to appoint counsel sua sponte did not violate Mr. Dusenbery's Sixth Amendment rights.
 
 VIII
 
 26
 Mr. Dusenbery also argues that the conspiracy conviction was improper because of a defect in the indictment. He points out that when he pleaded guilty to the continuing criminal enterprise charge, the government agreed to dismiss the conspiracy count. After he withdrew his guilty plea, the government did not move to reinstate the conspiracy count. Defects in the indictment, however, must be raised prior to trial. Rule 12(b)(2), Fed.R.Crim.P.; United States v. Oldfield, 859 F.2d 392, 396 (6th Cir.1988). The alleged defect in the indictment is irrelevant, moreover, because the conspiracy charge was ultimately dismissed.
 
 IX
 
 27
 The transcript of the jury instructions includes the following language: "the defendant has not been charged with the crime of unlawful use of a communications facility. However, you may consider when he committed this crime which is a violation of federal narcotics law while determining whether the government has proved a continuing criminal enterprise as charged in count one." (Emphasis added.)[2] Mr. Dusenbery argues that this language served to "direct a verdict" on one of the predicate acts. When we read the instructions as a whole, however, we see no danger of juror confusion. The judge gave the jury the statutory language of the communications facility offense and definitions of the key terms; carefully explained each of the essential elements of the offense; and instructed that in order for unlawful use of a communications facility to be used as a predicate offense, the jury must find "beyond a reasonable doubt" that the defendant committed such offense.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The defendant raises several claims of ineffective assistance of counsel. Ordinarily, of course, such claims are not cognizable on direct appeal. Here, however, because "the record is adequate to consider the merits of the defendant's allegations," we shall consider the claims. United States v. Wunder, 919 F.2d 34, 37 (1990)
 
 
 [2]
 It seems likely from the context that the trial judge intended to say that "you may consider whether he committed this crime ...," not "when." It is not clear whether the judge misspoke or whether--as seems more likely--the record reflects an error in transcription