FILED
United States Court of Appeals
Tenth Circuit

August 18, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

In re: GRAND JURY PROCEEDINGS

Nos.09-2062/09-2068 and
09-2209/09-2228

ORDER

The Court previously issued under seal two opinions regarding the
discovery and use of material before a Grand Jury in re:  09-2062/09-2068 and
09-2209/09-2228.  The Grand Jury at issue in those cases has now been
discharged without returning any indictment against the subject of the
investigation.

The Court believes that publication of these two opinions, in redacted form,
is necessary to advance the law on certain issues discussed in those opinions.
However, the Court is also mindful of the need to protect the privacy of the
subject of the investigation and the secrecy of Grand Jury proceedings.  Such
protections are particularly acute in this case where no indictment was returned
by the Grand Jury.

The subject of the Grand Jury has filed an objection to the publication of
these two opinions.  Alternatively, the subject of the investigation has suggested
redactions in the opinions, and reported that those suggested redactions were

agreeable to the United States Attorney.

Having considered the parties' positions and the competing and sometimes conflicting interests implicated, it is the judgment of the Court that:

(1)     The subject's request that these opinions not be published is DENIED.

(2)     The request for appropriate redactions is GRANTED as reflected in the opinions hereby being published.

(3)     As redacted, the two opinions in re: Grand Jury Proceedings Nos. 09-2062/09-2068 (on the first appeal) and 09-2209/09-2228 (on the second appeal) are attached to this order.  We ORDER that the opinions be published, and direct the Clerk to take appropriate steps in that regard.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

2

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 18, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH {REDACTED VERSION}

# UNITED STATES COURT OF APPEALS

## TENT CIRCUIT

In re: GRAND JURY PROCEEDINGS  |  Nos. 09-2209 & 09-2228

### {REDACTED}

Submitted on the briefs:[*]

{REDACTED}

Before **GORSUCH**, **EBEL**, and **HOLMES**, Circuit Judges.

**EBEL**, Circuit Judge.

These appeals stem from a grand jury investigation into misrepresentations

allegedly made by Appellee {on federal forms}.[1]  The Government issued two subpoenas

duces tecum to Appellee's {employee ("Employee")} who had assisted Appellee in

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

[1] {REDACTED} {This opinion has been redacted in appropriate places to preserve grand jury secrecy and the privacy of the subject.  Subsequent to the initial issuance under seal of the opinion and prior to this publication of the opinion, the grand jury was discharged without returning an indictment against the subject.}

completing the {two} forms. The subpoenas requested documents and records "regarding [{Employee}'s] involvement in completing {the forms} for [Appellee]." (Jt. App. at 99, 11.) Although Appellee moved to quash the subpoenas on various grounds, only his relevancy objections are pertinent to this appeal. The district court definitively resolved these matters {in Order 2}, when it ordered, after conducting an in camera review to assess relevancy, that certain categories of relevant documents be produced and quashing the subpoena as to irrelevant documents. The Government then filed a motion for reconsideration that was definitively resolved {in Order 3}. In a subsequent order{,} {Order 4,} the district court, over the Government's objections, authorized Appellee to redact irrelevant information from some of the subpoenaed documents that were otherwise relevant to the Government's investigation. The Government appeals from these orders.

In appeal No. 09-2209, the Government challenges the district court's relevancy determinations that it finally resolved in {Order 3}, arguing first that Appellee lacks prudential standing to raise relevancy objections against the subpoena issued to {Employee}. With respect to the merits of the objections, the Government asserts that the district court abused its discretion by engaging in an in camera review of specific documents included in the categories of materials subpoenaed to assess their relevancy and in denying production of certain other requested material. Because prudential standing is discretionary, we decline to address the Government's prudential standing challenge. On the merits, we conclude that the district court failed to apply the correct

2

legal standard for relevancy, and therefore abused its discretion as to its relevancy determinations in granting, in part, the motion to quash. Thus, we reverse the district court's orders related to relevancy.

In the Government's second appeal, No. 09-2228, the Government challenges {Order 4} solely on the grounds that the district court abused its discretion in authorizing redactions of personal family information in otherwise relevant subpoenaed documents. Because the district court again failed to apply the correct relevancy standard, we also reverse {Order 4}.

## BACKGROUND

As mentioned above, these appeals stem from two grand jury subpoenas issued to {Employee} requesting that {Employee} produce documents {Employee} prepared for Appellee in the process of {completing federal forms}. Although the two subpoenas were issued to {Employee} at different times and are not identical, the district court's orders at issue here apply to both subpoenas, and the differences in the subpoenas are not material to these appeals. Thus, for the sake of clarity, we will treat both together.

The controversy here started when Appellee moved to quash the subpoenas on grounds of attorney-client privilege, work-product doctrine, and relevancy. Without waiting for a response from the Government, the district court, {REDACTED}, issued {Order 1} addressing Appellee's motions to quash. Pertinent to the appeals at issue here, this order required {Employee} to produce certain subpoenaed documents so it could review them <u>in camera</u> to determine if they were relevant to the subject matter of the

3

grand jury investigation.  Because these proceedings are sealed, the order was not transmitted electronically and the Government did not receive the order until {two days after it was filed}.  During this delay, the Government, {REDACTED}, timely filed its response to Appellee's motions to quash, challenging Appellee's standing to make relevancy objections and also refuting the merits of those objections.  Immediately upon receiving the district court's order, the Government filed a "motion for reconsideration," requesting only that the district court reconsider {Order 1} in light of the Government's timely filed response.

The district court did so and revised {Order 1} in light of the Government's response.  After entertaining a number of other motions and considering the subpoenaed documents in camera, the district court issued a tentative order {REDACTED}, and {subsequently} issued its definitive order on these matters {in Order 2}, requiring Appellee to produce more documents than it had required in {Order 1}.

A few days later, {REDACTED}, the Government filed a second motion for reconsideration.  In addition to other matters, this motion again challenged Appellee's standing to make relevancy objections as well as the merits of those objections, but this time the Government provided the district court with new information regarding the scope of the grand jury investigation.  The district court again entertained this motion for reconsideration.  After issuing orders tentatively resolving these matters {REDACTED}, the district court heard arguments {REDACTED} that addressed both the standing and relevancy issues pertinent to the appeals at issue here.  Finally, {in Order 3}, the district

4

court issued an order definitively resolving the Government's second motion for reconsideration and revising its prior orders as necessary to accommodate for the increased scope of the grand jury investigation. The Government's first appeal, No. 09-2209, is from {Order 3}.

The squabbling over the subpoenas to {Employee}, however, continued even after {Order 3}. Some of the documents the court ordered {Employee} to produce under {Order 3} were produced with redactions of the personal information of Appellee's {family members}. The Government sought to compel production of these materials "without any unauthorized redactions." (Jt. App. at 252.) The district court reviewed unredacted versions of the documents in camera, and {in Order 4} authoriz{ed} the redactions of some family information, but require{ed} the removal of redactions of other information.[2]

**NOTICES OF APPEAL**

In appeal No. 09-2209, the district court granted the Government an extension of time for good cause under Federal Rule of Appellate Procedure 4(b)(4) that extended the time for filing the notice of appeal from {Order 3} until {approximately two months after

---

[2] Specifically, the district court required removal of the redactions concealing the name, place of birth, date of birth, present address, and current occupation of Appellee's {family members}. The district court allowed redactions that concealed "the occupations, employers, and addresses for the last ten (10) years and the Social Security numbers of {Appellee's family members}." (Jt. App. at 306.)

the filing of that order}. The Government filed its notice of appeal {six days before that deadline}. Although there is a dispute about the timeliness of this appeal, for reasons discussed below, we conclude the appeal was timely.

In appeal No. 09-2228, the Government also timely filed its notice of appeal. The Government filed its notice of appeal from {Order 4} on the same day the district court entered that order.

## I. Jurisdiction

We have jurisdiction under 18 U.S.C. § 3731 to review a governmental appeal from a final order granting, in full or in part, a motion to quash a grand jury subpoena. See Company X v. United States (In re Grand Jury Proceedings), 835 F.2d 237, 238 (10th Cir. 1987) (per curiam). There are two disputes, however, related to the timeliness of the Government's first appeal, No. 09-2209: (1) whether the {Order 2} or {Order 3} was the final order subject to appeal, and (2) if {Order 3} was the appealable final order, whether, in an appeal taken under 18 U.S.C. § 3731, the district court can grant an extension of time for filing a notice of appeal under Appellate Rule 4(b)(4), as it did here, that would allow the Government to file its appeal beyond the statutory thirty-day time limit contained in 18 U.S.C. § 3731. We address each issue in turn, and we conclude that appeal No. 09-2209 was timely filed.

   A. *Whether the time for filing a notice of appeal in appeal No. 09-2209 is measured*
      *from {Order 2} or {Order 3}*

6

The Government and Appellee dispute whether {Order 2} or {Order 3} finally resolved the standing and relevancy issues raised in appeal No. 09-2209.[3] Appellee asserts that the Government's first motion for reconsideration, which merely requested the district court to reconsider {Order 1} in light of the Government's timely filed response, tolled the running of the appeals clock until {Order 2} resolv{ed} that motion for reconsideration. After this point, however, Appellee argues that the Government's second motion for reconsideration was merely a successive motion for reconsideration that did not affect the finality of {Order 2}, which would mean the Government's appeal is untimely. The Government counters that its first true motion for reconsideration was the second motion for reconsideration of {Order 2}, and that this motion was not definitively resolved until {Order 3}. We agree with the Government that the appealable final order relevant for determining whether the appeal was timely was {Order 3}, but reach that conclusion for different reasons.[4]

18 U.S.C. § 3731 requires the government to file its notice of appeal within thirty days of when the district court order is rendered. This thirty-day clock begins to tick only when the district court has entered an appealable final order definitively resolving the motion before it. See United States v. Cos, 498 F.3d 1115, 1122 (10th Cir. 2007).

[3] Although the district court issued a number of interstitial orders related to the standing and relevancy issues, neither party suggests any order besides {Order 2} or {Order 3} could be the appealable final order from which we measure the timeliness of the Government's appeal.

[4] Because of the way we resolve this matter, we need not address the Government's contention that its first motion for reconsideration did not constitute a "true" motion for reconsideration.

"[F]inality is determined on the basis of pragmatic, not needlessly rigid pro forma, analysis." Id. (quotations and citations omitted). Where "further proceedings on the merits of [an issue ] were plainly contemplated" by an order, that order is not final. O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204, 1208-09 (10th Cir. 1992). Similarly, if a district court's order is ambiguous as to whether it has resolved the merits of an issue, "the time for filing a notice of appeal runs from the subsequent order that unambiguously" resolves that matter. Cos, 498 F.3d at 1122. Although the time for filing an appeal begins to run once an order definitively resolves the issue presented to the district court, "a timely motion for reconsideration tolls the thirty-day period until the district court rules upon that motion." Id. at 1120; see also United States v. Ibarra, 502 U.S. 1, 6 (1991) (per curiam) ("[A] motion for rehearing in a criminal case, . . . renders an otherwise final decision of a district court not final until it decides the petition for rehearing."). Successive motions to reconsider, however, will not toll the deadline for taking an appeal. See Cos, 498 F.3d at 1120; see also United States v. Marsh, 700 F.2d 1322, 1324-25 (10th Cir. 1983).

Contrary to Appellee's assertion, this case involves only a single motion for reconsideration relevant to tolling the time for filing an appeal from an appealable final order. Appellee's argument that the Government's "successive motions for reconsideration" could not toll the time to appeal {Order 1} rests upon a false premise: that {Order 1} was an appealable final order. This order, however, expressly contemplated further proceedings to resolve Appellee's relevancy objections because it

8

ordered production of the material to which Appellee objected so that it could assess its relevancy in camera and invited the Government to "advance legal reasons that withheld materials have a reasonable possibility of being relevant to the grand jury proceedings." (Jt. App. at 78, 82-83.) The district court did not finally decide which documents were subject to production and which documents were irrelevant until {Order 2} after conducting the in camera proceedings contemplated in {Order 1} and after considering the arguments advanced by the Government that the court had invited in {Order 1}. Therefore, the district court had not unambiguously resolved Appellee's motion to quash until {Order 2}, rendering that order the first appealable final order.

As a result, the thirty-day time limit for filing an appeal did not start to run until the district court issued {Order 2}. After this point, only a single motion for reconsideration was filed, in timely fashion, by the Government. This motion tolled the time for the Government to file its notice of appeal until the district court definitively resolved the motion. The district court did so in {Order 3}. Thus, we measure the timeliness of the Government appeal from {Order 3}.[5]

---

[5] {Order 1} was even more tentative than the order we held to be a non-final resolution in Cos. There, the Government filed a supplemental motion for reconsideration of the district court's suppression order, arguing for the first time that the good-faith exception to the exclusionary rule applied. Cos, 498 F.3d at 1120-21. The district court declined to address that argument, stating that it would be unfair to give the Government a second chance to make an argument it should have made in the first place. Id. at 1121. Nonetheless, the district court invited the Government to file a motion (its third motion for reconsideration) explaining in more detail why the good-faith exception should apply. Id. We held that that invitation "suggest[ed] that the district court had not finally

(continued...)

9

B. *Whether Rule 4(b)(4) can extend the time for filing an appeal beyond the thirty-day period provided for in 18 U.S.C. § 3731*

Pursuant to 18 U.S.C. § 3731, the Government had thirty days from {Order 3} to file its notice of appeal, but the district court, pursuant to Federal Rule of Appellate Procedure 4(b)(4), granted the Government an extension of time {REDACTED} to file the notice of appeal. We requested supplemental briefing to address whether Rule 4(b)(4)'s extension provision could be applied to appeals taken under 18 U.S.C. § 3731.[6] We conclude that it can.

Section 3731 provides that such appeals "shall be taken within thirty days after the decision, judgment or order has been rendered." This thirty-day time limit is a jurisdictional limitation. See United States v. Martinez, 681 F.2d 1248, 1254 (10th Cir. 1982); see also Cos, 498 F.3d at 1135 (Gorsuch, J., dissenting); Bowles v. Russell, 551 U.S. 205, 212-13 (2007) (describing statutory-based time limits as jurisdictional). Appellate Rule 4(b)(1)(B) applies § 3731's thirty-day time limit by similarly requiring the government to file its notice of appeal "within 30 days . . . of . . . the entry of the

---

(...continued)
adjudicated the government's supplemental motion to reconsider insofar as it concerned the good-faith issue," and so the time for appeal on that issue did not start to run until after the district court denied the Government's subsequent motion for reconsideration. Id. at 1122. In the case before us today, {Order 1} not only expressly invited further argument from the Government, it also provided for additional court action, in the form of in camera review, to resolve Appellee's relevancy objections.

[6] The question whether Rule 4(b)(4) can extend time for an appeal taken under § 3731 is a question we have not previously faced. This question was not at issue in Cos. See 498 F.3d at 1120-22 & 1135 n.1.

judgment or order being appealed[.]" However, Rule 4(b)(4) further provides that, "[u]pon a finding of excusable neglect or good cause, the district court may . . . extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)." Thus, if Rule 4(b)(4)'s extension provision applies to appeals taken under 18 U.S.C. § 3731, it would authorize the district court to extend § 3731's thirty-day jurisdictional time limitation.

Although the thirty-day time limit in § 3731 is jurisdictional and contains the mandatory term "shall," the language of § 3731 does not explicitly address whether a court can extend this time limit pursuant to a rule. Thus, it is not clear that Rule 4(b)(4) irreconcilably conflicts with § 3731.

Even if there is a conflict, however, we conclude that Rule 4(b)(4) conforms with the limitations of the Rules Enabling Act. The Rules Enabling Act authorizes the Supreme Court "to prescribe general rules of practice and procedure" for federal courts. 28 U.S.C. § 2072(a). These rules, however, may not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). A rule prescribed within the "power delegated to this court, has the force of a federal statute." Sibbach v. Wilson & Co., 312 U.S. 1, 13 (1941). And assuming a rule satisfies the requirements of the Rules Enabling Act, "[a]ll laws in conflict with such rules shall be of no further force or effect[.]" 28 U.S.C. § 2072(b); see also Rolland v. Primesource Staffing, L.L.C., 497 F.3d 1077, 1078 (10th Cir. 2007) (explaining that rules supersede earlier-enacted statutes that conflict with the rule). Here, there is no dispute that Rule 4(b)(4) was prescribed after the enactment of the

11

thirty-day time limit contained in 18 U.S.C. § 3731.[7] Thus, we need only decide whether

Rule 4(b)(4) conforms with the Rules Enabling Act; if so, it will apply to appeals taken

under § 3731.

As a starting point, we emphasize that the Federal Rules of Appellate Procedure

are entitled to a presumption that they comply with the Rules Enabling Act. See

Burlington N. R.R. Co. v. Woods, 480 U.S. 1, 6 (1987). This presumption of validity

arises because the Rules Advisory Committee, the Judicial Conference, and the Supreme

Court first craft and review these rules, and once crafted, the rules still do not take effect

until after they have been reported to Congress for its review. See id.; see also Bus.

Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 552 (1991) (describing

the "large hurdle" that must be overcome if one challenges a rule as exceeding the scope

of authority granted by the Rules Enabling Act).

---

[7] Congress first enacted the thirty-day time limit for government appeals taken under 18 U.S.C. § 3731 in 1948. Pub. L. 80-772, c. 645, 62 Stat. 845 (June 25, 1948). In 1971, Congress amended the language of the thirty-day time limit provision, but that amendment did not change the thirty-day time limit at issue here. See Pub. L. 91-644, tit. III, § 14(a), 84 Stat. 1890 (Jan. 2, 1971). Rule 4(b)(4)'s roots, on the other hand, only trace back to 1966 when Federal Rule of Criminal Procedure 37(a)(2) was first amended to authorize an extension of time for filing a notice of appeal upon a showing of excusable neglect. 39 F.R.D. 69, 199-200 (1966). In 1968, the Federal Rules of Appellate Procedure were first prescribed and Criminal Rule 37(a)(2)'s excusable neglect provision became Appellate Rule 4(b)(4), with only minor changes. Compare Fed. R. App. P. 4(b)(4) (1968), with 39 F.R.D. at 199-200. Finally, in 1998, Appellate Rule 4(b)(4) was amended to authorize an extension for good cause as well as excusable neglect. Fed. R. App. P. 4, Advisory Committee Notes, 1998 Amendments, subdivision(b). Thus, Congress enacted the specific statutory provision of 18 U.S.C. § 3731 at issue here—its thirty-day time limit—prior to Rule 4(b)(4)'s extension provision.

In light of this presumption, we conclude that Rule 4(b)(4) is a "rule[] of practice and procedure" within the meaning of 28 U.S.C. § 2072(a). A rule regulates procedure if it regulates "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Sibbach, 312 U.S. at 14; see also Hanna v. Plumer, 380 U.S. 460, 464 (1965). The time for filing an appeal is not a substantive "right" or a "duty" comparable to, for instance, a negligence standard. Instead, the time for filing an appeal merely regulates the process for obtaining appellate review of a decision that adjudicates substantive rights and duties. In fact, in the past, Congress has explicitly recognized that the time for filing an appeal is a matter of practice and procedure. From 1948 to 1988, 18 U.S.C. § 3772 authorized the Supreme Court to prescribe "rules of practice and procedure." Pub. L. 80-772, c. 645, 62 Stat. 846 (June 25, 1948), repealed by Pub. L. 100-702, tit. IV, §§ 401-407 (effective Dec. 1, 1988). Within that grant of authority, the statute explicitly included "rules [that] prescribe the times for and manner of taking appeals and applying for writs of certiorari."[8] Id. Therefore, we conclude that rules regulating the time for filing an appeal, including Rule 4(b)(4), are procedural for purposes of the Rules Enabling Act.

We further conclude that Rule 4(b)(4) does not alter "substantive rights" in violation of 28 U.S.C. § 2072(b). Substantive rights are the bundle of rights such as due

---

[8] At least one scholarly treatise has also looked to this predecessor enabling act in concluding that Rule 4(b)(4) applies to appeals taken under 18 U.S.C. § 3731 without violating the Rules Enabling Act. See 16A Wright & Miller, et al., Federal Practice and Procedure § 3950.9 at 496-99 (4th ed. 2008).

13

process, the right to a speedy trial, or, under the facts of this case, the Government's right to obtain evidence to pursue a grand jury investigation and Appellee's right to exclude irrelevant evidence from that investigation. Granting an extension of time to file a notice of appeal under Rule 4(b)(4) will not alter the substantive standard for adjudicating the Government's right to obtain evidence or Appellee's right to exclude that evidence. We will apply the same relevancy standard whether the appeal is taken five days after the order is issued or thirty-five days after the order is issued. See Burlington N., 480 U.S. at 5 ("The cardinal purpose of Congress in authorizing the development of a uniform and consistent system of rules governing federal practice and procedure suggests that Rules which incidentally affect litigants' substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules."). Thus, we do not perceive Rule 4(b)(4) as violating the "substantive rights" proviso of 28 U.S.C. § 2072(b).

Although applying Rule 4(b)(4) to appeals taken under 18 U.S.C. § 3731 has the potential to authorize district courts to extend an appellate jurisdictional time limit, we find no prohibition against such a rule in the Rules Enabling Act. First, while 28 U.S.C. § 2072 explicitly requires that rules be procedural and not affect substantive rights, the plain language of the statute does not prohibit rules that affect jurisdictional time limits, which suggests such rules are not prohibited. Second, until 2002, Appellate Rule 1(b) provided that the Rules of Appellate Procedure "shall not be construed to extend or limit the jurisdiction of the courts of appeals as established by law." See Fed. R. App. P. 1, Advisory Committee Notes, 2002 Amendments, subdivision(b). If the Supreme Court

14

was not authorized by the Rules Enabling Act to prescribe rules that affected statutory-based jurisdictional time limits, Appellate Rule 1(b) would have been superfluous and duplicative.[9]

In fact, Congress's affirmative actions with respect to Rule 4(b) suggest it approved applying Rule 4(b)(4)'s extension provision to appeals taken under 18 U.S.C. § 3731. In 1988, Congress affirmatively amended Rule 4(b) to authorize the government to file its notice of appeal up to thirty days after the defendant files a notice of appeal. Pub. L. 100-690, 102 Stat 4419 (Nov. 18, 1988). Congress would have understood that incorporation of this amendment to the rule in an appeal taken under 18 U.S.C. § 3731 could potentially result in an appeal filed after the expiration of the thirty-day time limit contained in § 3731, but within the time limit prescribed by Rule 4(b)(1)(B)(ii), because the rule measures the time from the defendant's appeal rather than from the judgment as used by § 3731. Thus, by affirmatively passing this amendment, notwithstanding the mandatory language of § 3731, Congress has suggested its willingness to allow Rule 4(b) to extend § 3731's jurisdictional time limit.[10] Moreover, by specifically amending Rule

---

[9] Federal Rule of Civil Procedure 82 similarly provides that "[t]hese rules do not extend or limit the jurisdiction of the district courts." Like Appellate Rule 1(b), Civil Rule 82 would be superfluous if such rules that "extend or limit the jurisdiction of the district courts" were beyond the scope of the Supreme Court's authority to prescribe rules.

[10] In United States v. Sasser, 971 F.2d 470, 473 (10th Cir. 1992), we concluded that Rule 4(b)(1)(B)(ii) could not be applied to appeals taken under 18 U.S.C. § 3731 if it would extend § 3731's jurisdictional time limit. We reached this conclusion solely because Rule 1(b) precluded us from construing Rule

(continued...)

15

4(b) without altering Rule 4(b)(4), Congress may have signaled its satisfaction with cases applying Rule 4(b)(4) to appeals taken under 18 U.S.C. § 3731. <u>See, e.g.</u>, <u>United States v. Rothseiden</u>, 680 F.2d 96, 98 (11th Cir. 1982) (finding Rule 4(b)(4)'s excusable neglect provision applies to government appeals taken under 18 U.S.C. § 3731).[11]

Here we need not construe Rule 4(b)(4) in light of the prior proscription in Rule 1(b) against construing rules as extending or limiting appellate jurisdiction because Rule 1(b) was abrogated in 2002. <u>See</u> Fed. R. App. P. 1, Advisory Committee Notes, 2002 Amendments, subdivision(b). The impetus for abrogating Rule 1(b) was the enactment of two statutes—neither of which related to Rule 4(b)(4)—that authorized the Supreme Court to prescribe rules that would necessarily "extend or limit the jurisdiction of the court of appeals." <u>See</u> 28 U.S.C. §§ 1292(e) and 2072(c); <u>see also</u> Fed. R. App. P. 1, Advisory Committee Notes, 2002 Amendments, subdivision(b). Nonetheless, its deletion

---

(...continued)

4(b)(1)(B)(ii) to extend federal court jurisdiction. <u>Id.</u> Since Rule 1(b) has been abrogated, the rationale underlying <u>Sasser</u> is no longer applicable. <u>See also</u> 16A Wright & Miller § 3950.8 at 464-65 (questioning the reasoning of <u>Sasser</u>).

[11] We do not think our conclusion that Rule 4(b)(4) can extend the jurisdictional time limit contained in § 3731 conflicts with Supreme Court cases suggesting rules cannot extend federal court jurisdiction. <u>See</u> <u>United States v. Sherwood</u>, 312 U.S. 584, 590-91 (1941); <u>see also</u> <u>Willy v. Coastal Corp.</u>, 503 U.S. 131, 135 (1992); <u>Snyder v. Harris</u>, 394 U.S. 332, 337-38 (1969); <u>Sibbach</u>, 312 U.S. at 10. These cases all involved Federal Rules of Civil Procedure which are, and always have been, explicitly constrained by Civil Rule 82's prohibition against rules of civil procedure that "extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82, Advisory Committee Notes, 1937 Adoption. Since Appellate Rule 1(b) was abrogated in 2002, no such limitation applies to the Federal Rules of Appellate Procedure at issue here. <u>See</u> Fed. R. App. P. 1, Advisory Committee Notes, 2002 Amendments, subdivision(b).

has broader implications because, instead of merely providing two narrow exceptions to Rule 1(b), the 2002 amendments completely abrogated Rule 1(b). Thus, it was contemplated that "one or more of the Federal Rules of Appellate Procedure . . . will extend or limit the jurisdiction of the courts of appeals." See Fed. R. App. P. 1, Advisory Committee Notes, 2002 Amendments, subdivision(b). Therefore, Rule 4(b)(4) can extend the jurisdictional time limit imposed by 18 U.S.C. § 3731.[12]

### C. Conclusion as to Jurisdiction for Appeal No. 09-2209

The Government thus timely filed its notice of appeal for appeal No. 09-2209. We measure the time for taking that appeal from {Order 3}. The district court found good cause to extend the time for filing a notice of appeal {past the thirty-day mark}, pursuant

---

[12] We note that Rule 4(b)(4), by its own terms, authorizes a district court to extend the time for filing an appeal "for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)." (emphasis added). Since 18 U.S.C. § 3731 sets forth the thirty-day time limit at issue here, one could argue that Rule 4(b)(4) has no application to appeals taken under § 3731 because the time limit is not "prescribed" by Rule 4(b). However, this argument ultimately is unsuccessful. Here, rule 4(b)(1)(B)(i) "prescribes" the thirty-day time limit in the sense that it carries § 3731's thirty-day time limit into practice, and is itself a jurisdictional rule as applied to appeals taken under § 3731. See Bowles, 551 U.S. at 212-13 (explaining that "statute-based" time limits are jurisdictional). Thus, if Rule 4(b)(4) can extend the appeal time set forth in Rule 4(b)(1)(B)(i), that result must necessarily trump any inflexible thirty-day limit in § 3731 because, as we pointed out previously, Rule 4(b) supersedes any contrary result in § 3731. See United States v. Vastola, 899 F.2d 211, 220-22 (3d Cir. 1990) (applying Rule 4(b)(4)'s extension provision to an appeal taken under 28 U.S.C. § 1291 and 18 U.S.C. § 3731), vacated on other grounds by 497 U.S. 1001 (1990); United States v. Rothseiden, 680 F.2d 96, 98 (11th Cir. 1982) (concluding that Rule 4(b)(4)'s extension provision applies to government appeals taken under 18 U.S.C. § 3731); 16A Wright & Miller § 3950.9 at 495-99 (explaining that Rule 4(b)(4) applies to appeals taken under § 3731).

17

to Appellate Rule 4(b)(4).  The Government timely filed its notice of appeal {six days before the extended deadline date}.  Therefore, we have jurisdiction to hear the appeal in No. 09-2209.[13]

II.  Standing

The Government asserts Appellee lacks prudential standing to challenge subpoenas issued to {Employee}.  Unlike Article III standing, prudential standing is discretionary; thus, if we deny judicial relief on the merits, we can decline to address prudential standing in favor of proceeding to the merits of the issues presented.  See Grubbs v. Bailes, 445 F.3d 1275, 1281 (10th Cir. 2006) ("Questions relating to prudential standing . . . may be pretermitted in favor of a straightforward disposition on the merits."); see also, Finstuen v. Crutcher, 496 F.3d 1139, 1147 (10th Cir. 2007) (same); Fraternal Order of Police v. United States, 173 F.3d 898, 905 (D.C. Cir. 1999) ("It is . . . permissible to reject a claim on the merits without having explicitly resolved the prudential standing issue.").  Here, the only issue on the merits is whether the district court could grant the relevancy-based objections advanced by Appellee.  Because we conclude that the district court was required to deny Appellee this relief, we need not—and do not—resolve whether Appellee has prudential standing.[14]

---

[13] As pointed out previously, there is no dispute that appeal No. 09-2228 was timely.

[14] As we cannot pretermit an issue of constitutional standing, see Grubbs, 445 F.3d at 1281, nor merely accept the litigants' word that the requirements of Article III standing have been satisfied, see FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990), we pause to make explicit that we perceive Appellee to

(continued...)

18

III. Relevancy

We now turn to the merits of the two appeals. Since they raise similar issues, we address them together. Both appeals stem from the district court's orders requiring certain documents be produced in camera so that the court could assess the relevancy of those documents and both relate solely to the district court's relevancy determinations. After reviewing these documents, the district court required production of some, quashed the subpoena as to others based on irrelevance, and further ordered redactions of irrelevant portions of otherwise relevant documents.[15]

The Government argues that the district court erred by requiring certain documents be produced in camera so it could assess whether individual documents had any relevancy to the grand jury investigation. Here, the Government raises two issues. First, the Government suggests that a district court can never engage in an in camera review of subpoenaed material to assess relevancy.

_____

(...continued)
have an adequate interest in the subpoenaed documents to satisfy the constitutional standing requirements of Article III.

[15] The appeals raise only a general legal attack on the standard applied by the district court in limiting the scope of the subpoena. The precise documents which the district court ordered not to be produced and the precise redactions ordered are not before us, although the Government did submit to us several examples of the redactions. We have conducted no in camera review ourselves, and so our review is necessarily limited to the legal standard articulated by the district court. Our task is made more difficult because the district court's application of the standard used is itself highly abbreviated.

19

Second, even if in camera review may at times be permissible, the Government argues that a district court cannot engage in document-by-document or line-by-line assessment of relevancy. Specifically, the Government claims a district court must consider relevancy based on either (a) the broad, overarching category of material requested by the subpoena or (b) the more specific, but still broad, sub-categories of material requested by the subpoena. The overarching category in this subpoena was the request for "[a]ll of the documents and/or records regarding [{Employee}'s] involvement in completing {the federal forms} forms for [Appellee]." (Jt. App. at 99, 11.) Under this overarching category, the subpoena identified twelve specific sub-categories, such as "[a]ny and all correspondence" with particular individuals or "questionnaires/forms, including drafts" completed for {REDACTED} process. (Jt. App. at 99, 11.) The Government complains that, in this case, the district court (a) crafted its own categories against which to assess relevancy instead of relying on the categories of materials articulated in the subpoena, and (b) the district court assessed the relevancy of specific documents and specific portions of documents instead of the general category of subpoenaed materials. Under this approach, the district court excluded certain documents from production and redacted portions of otherwise relevant documents. The second appeal, No. 09-2228, relates solely to the district court's authority to redact portions of otherwise relevant documents—specifically, {Order 4, which} allowed certain family information to be redacted from otherwise relevant documents. We conclude that the district court failed to apply the proper legal standard for relevance.

Accordingly, we reverse the district court's orders with respect to its relevancy determinations.

*A. Standard of Review*

We review a district court's order granting a motion to quash or modify a grand jury subpoena for an abuse of discretion. See In re Grand Jury Proceedings, 115 F.3d 1240, 1243 (5th Cir. 1997). We review any purely legal questions de novo. See United States v. Anderson (In re Grand Jury Subpoenas), 906 F.2d 1485, 1488 (10th Cir. 1990). "A district court abuses its discretion when it commits an error of law." United States v. Commanche, 577 F.3d 1261, 1266 (10th Cir. 2009)

B. *Discussion*

A "grand jury occupies a unique role in our criminal justice system." United States v. R. Enterprises, Inc., 498 U.S. 292, 297 (1991). Because a grand jury's role is "to inquire into all information that might possibly bear on its investigation," a grand jury necessarily "paints with a broad brush." Id. At the same time, a grand jury's investigatory powers are "not unlimited," and a grand jury is "not licensed to engage in arbitrary fishing expeditions."[16] Id. at 299 (emphasis added). The Supreme Court has explained that, where, as here, a grand jury subpoena is challenged under Rule 17(c)(2) on relevancy grounds, "the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the

---

[16] The important word here is "arbitrary." As is pointed out herein, a grand jury is allowed a certain degree of fishing to determine if a crime has been committed or to assure itself that no crime has been committed.

21

Government seeks will produce information relevant to the general subject of the grand jury's subpoena." R. Enterprises, 498 U.S. at 301; see also United States v. Erickson, 561 F.3d 1150, 1161 (10th Cir. 2009). "[A] grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." R. Enterprises, 498 U.S. 301.

Here, we believe the district court abused its discretion in three ways: (1) by redefining the categories of subpoenaed material for purposes of assessing relevancy; (2) by engaging in a document-by-document and line-by-line analysis of relevancy after finding categories of material relevant; and (3) by engaging in an in camera review of documents to assess relevancy when such a procedure was unnecessary to applying the R. Enterprises standard of relevancy. Accordingly, while the district court has exhibited great patience and diligence in overseeing and attempting to resolve the wrangling between Appellee and the Government in these grand jury proceedings, we must reverse its relevancy determinations.

At the outset, we find it helpful first to review the district court's basic approach to relevancy in this case. First, the district court identified specific categories. These categories, however, were not those delineated in the subpoena. The district court then concluded that some materials within these court-defined categories could potentially produce relevant information. Nonetheless, the district court, concerned that some potentially irrelevant information would also be produced if it ordered production of the entire court-defined categories of material, required that the documents be produced for in

22

camera review so that irrelevant documents could be excluded from production. The district court then engaged in a document-by-document, and at times a line-by-line, review of the subpoenaed material for relevancy. The district court ordered the production of documents it deemed relevant, and either quashed the subpoena as to irrelevant documents or ordered redactions of irrelevant information in otherwise relevant documents.

The district court committed a legal error by redefining the categories of material sought by the Government in order to assess relevancy and further engaging in a document-by-document and line-by-line assessment of relevancy. In R. Enterprises, the Supreme Court explained that the district court must deny a motion to quash a subpoena based on relevancy unless "there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's subpoena." 498 U.S. at 301 (emphasis added). First, the reference to a "category of materials" contemplates that the district court will assess relevancy based on the broad types of material sought by the Government. This broad analysis forecloses the document-by-document or line-by-line approach to assessing relevancy that the district court took in this case. The district court's approach entails a much more exacting assessment of relevancy than the relaxed, categorical approach articulated by R. Enterprises. Moreover, as we elaborate below, the district court's approach treads upon the grand jury's broad investigatory powers, undermines its secrecy, and causes unnecessary delay, as has amply been demonstrated in this case. Second, the standard

23

articulated by <u>R. Enterprises</u> does not refer to just any category of material; rather, it specifically refers to the category "the Government seeks." <u>Id.</u> This language indicates that the district court is bound to assess relevancy based on the category of materials sought by the government, and it cannot create new categories for purposes of assessing relevancy.

In accord with Rule 17(c)(2), we conclude that the district court may modify the subpoena by quashing entire categories or sub-categories of material as irrelevant, but, under <u>R. Enterprises</u>, the district court cannot go further and quash the subpoena as to specific documents within those sub-categories (or specific lines within relevant documents). Thus, the district court may consider the relevancy of each category or sub-category contained in the subpoena.

In assessing relevancy, district courts must remember their limited role in grand jury proceedings. <u>See</u> <u>United States v. Williams</u>, 504 U.S. 36, 49-50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). While a "grand jury normally operates . . . in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been . . . at arm's length." <u>Id.</u> at 47. Although the district court undoubtedly has a role to play in enforcing the relevancy limitations imposed by Federal Rule of Criminal Procedure 17(c)(2)'s "reasonableness" requirement,

see R. Enterprises, 498 U.S. at 299-300, the district court cannot unduly impede the grand jury's broad investigatory powers, undermine its secrecy, or cause unnecessary delay.

A non-categorical approach to relevancy as the district court employed in this case, however, does unduly disrupt the grand jury's broad investigatory powers and its unique function "to inquire into all information that might possibly bear on its investigations." See id. at 297. A non-categorical approach forces the Government to justify the relevancy of hundreds or thousands (or more) of individual documents, which it has not yet even seen, or even lines within those documents, as opposed to merely explaining how a broad category of materials could contain possibly relevant material—a much more manageable task at this stage of the proceedings. The Government often is not in a position to establish the relevancy with respect to specific documents, much less specific lines, because (a) it may not know the precise content of the requested documents or particular lines and (b) it may not know precisely what information is or is not relevant at the grand jury investigative stage. See United States v. Triumph Capital Group, Inc., 544 F.3d 149, 168 (2d Cir. 2008) ("Before the subpoenas are issued, the government often does not have at its disposal enough information to determine precisely what information will be relevant."). In fact, it is for this reason that "subpoenas duces tecum are often drawn broadly, sweeping up both documents that may prove decisive and documents that turn out not to be." Id. (further explaining that "[t]his practice is designed to make it unlikely that a relevant document will escape the grand jury's notice"). Such a process necessarily involves a fishing expedition by the grand jury, but such fishing is permissible

25

so long as it is not an <u>arbitrary</u> fishing expedition and satisfies the <u>R. Enterprises</u> relevancy standard.  <u>See</u> <u>R. Enterpises</u>, 498 U.S. at 299 (noting that "[g]rand juries are not licensed to engage in arbitrary fishing expeditions").

By way of example, we look to the district court's conclusion that only materials related to certain questions on {Form 2} were relevant.  While the questions on {Form 2} that relate directly to the possible misrepresentations on {Form 1} for which Appellee is under investigation indisputably relate to the grand jury investigation, other questions also have a "reasonable possibility" of producing relevant information.[17]  If Appellee misrepresented information on other questions, that information could lead to an expanded investigation into other charges of misrepresentation.  It would also reflect on motive and intent.  This type of fishing relates directly to the current investigation, and is not arbitrary.  On the other hand, if Appellee answers other questions honestly, a grand jury could perceive that as exculpatory evidence with respect to the misrepresentations apparently currently under investigation.[18]  This type of fishing is also not arbitrary because part of a grand jury's broad investigatory responsibilities include satisfying itself that no crime has occurred.[19] <u>See</u> <u>R. Enterprises</u>, 498 U.S. at 297 (explaining that a grand

[17] {Form 2} appears to contain similar questions to {Form 1} and appears to have been relied upon by {Employee} to complete portions of {Form 1}.

[18] Of course, our suggestions as to how a grand jury could interpret the evidence are not intended to suggest that a grand jury should or would interpret the evidence in that manner.

[19] Another example of the district court's intrusion into the grand jury's broad investigatory powers involves its decision to authorize the redaction from

(continued...)

26

jury "'can investigate merely on suspicion that law is being violated, or even because it wants assurances that it is not'" (quoting United States v. Morton Salt Co., 338 U.S. 632, 642-43 (1950))).

The district court's non-categorical approach also risks thwarting the grand jury's broad investigation because in assessing relevancy the court must rely on its necessarily incomplete understanding of the investigation. As the Government points out, "given a district court's limited role in the proceedings, it is simply not possible for the court to accurately determine whether an individual document or portion thereof has possible relevance to the investigation." (Aplt. Bf. at 37.) Instead, "[o]nly the investigators, familiar with the minute details of the investigation{,} are likely to catch subtle allusions or make important connections between seemingly unrelated facts." (Id.)

Although the Government could mitigate this problem by fully disclosing to the district court the breadth of the investigation in full detail, this solution undermines another important interest: grand jury secrecy. To justify a categorical relevancy conclusion, the Government would need to supply the district court (and, if necessary, the objector), with only a general picture of the investigation. This case illustrates, however, that a document-by-document approach to relevancy may require increased and undue disclosure about the investigation. Here, for example, the Government had to disclose

---

(...continued)
documents of the social security numbers of Appellee's {family members}. Social security information is often an especially effective investigatory tool, and when considered in a categorical sense, has a "reasonable possibility" of leading to relevant information.

27

additional information to the Court to demonstrate the relevance of additional questions on {Form 2}, and this information was ultimately transmitted to Appellee. (Compare Jt. App. at 243-44 (district court's {Order 3} noting that the breadth of the investigation has expanded to at least four questions and answers on {Form 1}), with Jt. App. at 1 (Appellee's first motion to quash asserting that the investigation was "in relation to a single response to {a single question} on {Form 1}").) Thus, as this case evidences, a document-by-document assessment of relevancy "threatens to compromise 'the indispensable secrecy of grand jury proceedings.'" R. Enterprises, 498 U.S. at 299 (quoting United States v. Johnson, 319 U.S. 503, 513 (1943)).

Finally, a non-categorical approach to relevancy would invite delays in grand jury proceedings that could slow its investigation to a crawl and allow the target of an investigation to exploit the delay. In R. Enterprises, the Supreme Court emphasized that the district court should avoid bogging down the grand jury with "procedural delays or detours." 498 U.S. at 298. Document-by-document assessment of relevancy risks turning a grand jury into a full trial, which is not the purpose of such proceedings. See Williams, 504 U.S. at 51 ("It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge.") This case is a paradigm of such delay as the district court's diligent document-by-document and line-by-line in camera review delayed the grand jury's receipt of relevant documents and wholly prevented it from obtaining some information that fell within R. Enterprises' categorical standard of relevance. Had Appellee appealed the district court's

28

orders to produce relevant documents, this delay would have been further exacerbated. The categorical approach we adopt in following R. Enterprises avoids this problem by allowing the district court to make a generalized finding that there is a "reasonable possibility" that a broad category of subpoenaed material contains information relevant to the grand jury investigation.

We can sympathize with the district court's desire to prevent the grand jury from subpoenaing wholly irrelevant information. Incidental production of irrelevant documents, however, is simply a necessary consequence of the grand jury's broad investigative powers and the categorical approach to relevancy adopted in R. Enterprises. Other limitations beyond the relevancy requirement exist and may, in appropriate circumstances, preclude production of otherwise relevant material, although they too must be tightly circumscribed to avoid unnecessary interference with the grand jury function.

Accordingly, we hold that a district court must assess the relevancy of the subpoenaed material as delineated in the subpoena itself and that the district court must assess those categories for relevance, as opposed to assessing relevancy with respect to particular documents within those categories or particular portions of documents.[20]

Because, as we discuss below, we conclude that the district court could have, and should have, made its relevancy determination by assessing the broad categories

---

[20] Although the issue of relevancy must be resolved with the categorical approach set forth in R. Enterprises, there may be a limited need to examine some documents to determine other issues such as privilege, whether a document falls within the relevant category, or ownership. These other issues are not presented to us on this appeal.

29

contained in the subpoena, we also conclude that the district court abused its discretion in engaging in an in camera review of subpoenaed material to assess relevancy. We do not adopt in this case the Government's argument that a district court is per se barred from ever engaging in an in camera review to assess relevancy, although, even assuming, without yet deciding, that in camera review may be available in appropriate circumstances, only highly unusual circumstances would warrant such a procedure for assessing relevancy. Cf. United States v. Dusenbery, 89 F.3d 836 (Table), 1996 WL 306517, *2 (6th Cir. 1996) (unpublished) (rejecting subpoenaed party's claim that the district court abused its discretion in denying an in camera review of subpoenaed material to assess relevancy because the subpoenaed material clearly satisfied the relevancy standard, but not suggesting district court lacked the discretion to order the requested in camera review in an appropriate case). Generally, a district court will need to look only to the description of the category of material sought to make its relevancy determination. And where, as here, a district court can apply the R. Enterprises standard of relevancy by simply looking at the category descriptions, its relevancy analysis ceases there. That is as far as we need go to resolve this appeal. We now turn to applying these rules to the appeals before us.

### i. Appeal No. 09-2209

In appeal No. 09-2209, the district court failed to apply properly the categorical relevancy standard articulated in R. Enterprises. First, the district court assessed the relevancy of material by splitting the material into two categories of its own making: (1)

30

{material submitted after a particular date}; and (2) particular questions on [Form 2]. The district court should have instead assessed relevancy based solely on the categories set forth in the subpoena. Second, the district court recognized that even the more circumscribed categories it created had the reasonable possibility of leading to relevant information. Thus, even if the district court had not erred in redefining the categories of subpoenaed material, the district court should nevertheless have terminated its relevancy inquiry at this point and ordered production of the material covered by its more circumscribed categories because it had correctly recognized that the category of information was relevant to the investigation under the R. Enterprises standard.[21]

### ii.    Appeal No. 09-2228

With respect to the second appeal, the district court ordered that particular documents could be redacted to conceal certain family information contained in otherwise relevant, producible documents. As discussed above, this line-by-line analysis is inconsistent with the categorical approach of R. Enterprises, and it constitutes legal error.

### CONCLUSION

Having reviewed the categories set forth in the subpoenas, we conclude they satisfy the broad relevancy standard articulated in R. Enterprises. For the foregoing

---

[21] For the same reasons a document-by-document assessment of relevancy is reversible error, to the extent the district court also ordered, on the basis of irrelevancy, redactions of material within the producible, relevant documents, the district court also erred.

reasons, in appeal No. 09-2209, we REVERSE the district court's orders related to relevancy as inconsistent with R. Enterprises. In appeal No. 09-2228, we also REVERSE the district court's {Order 4} as inconsistent with R. Enterprises. This matter is REMANDED to the district court.